296 F.3d 76
 David PEARL, Plaintiff-Appellant,
v.
The CITY OF LONG BEACH, Long Beach City Police Department, Long Beach Police Officer Leo Nolan, Arthur Whitman and Long Beach Police Officer Vincent Milo, Defendants-Appellees.
 Docket No. 01-7914.
 United States Court of Appeals, Second Circuit.
 Argued: April 2, 2002.
 Decided: July 15, 2002.
 
 Stephan H. Peskin, Tolmage, Peskin, Harris & Falick, New York, N.Y. (Jonathan C. Moore, New York, NY; William H. Goodman, Center for Constitutional Rights, New York, NY, on the brief), for Plaintiff-Appellant.
 Corey E. Klein, Acting Corporation Counsel, Long Beach, NY, for Defendants-Appellees The City of Long Beach and Long Beach City Police Department.
 Orrit Hershkovitz, Snitow Kanfer Holtzer & Millus, LLP, New York, N.Y. (Paul F. Millus, New York, NY, on the brief), for Defendant-Appellee Leo Nolan.
 Michael T. Hopkins, Hopkins & Kopilow, Garden City, NY, for Defendant-Appellee Arthur Whitman.
 Christine McInerney, Ruskin, Moscou, Evans & Faltischek, P.C., Uniondale, NY, submitted papers for Defendant-Appellee Vincent Milo.
 Before WALKER, Chief Judge, NEWMAN, and KEARSE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 This appeal illustrates, in a dramatic context, the tension between the judicial system's instinct to provide a remedy for every wrong and the system's recognition that the passage of time must leave some wrongs without a remedy. David Pearl appeals from the July 18, 2001, judgment of the District Court for the Eastern District of New York (Leonard D. Wexler, District Judge) dismissing, as barred by the statute of limitations, his suit seeking damages for police brutality allegedly inflicted upon him 35 years ago. Acknowledging the normally applicable barrier of the statute of limitations, Pearl contends that he may sue at this late date because the settlement of his prior timely lawsuit was obtained by fraud, his currently pleaded causes of action were concealed by fraud, and he can now establish the truth through the testimony of a conscience-stricken police officer who admits that he participated in the brutality and that he and the other defendants lied about Pearl's claim. We are obliged to agree with the District Court that Pearl's evidence, accepted as true for purposes of this appeal, does not permit his current suit to proceed. We therefore affirm.
 
 Background
 
 2
 The alleged assault. Pearl alleges the following circumstances. In 1967, Pearl, then sixteen years old, was stopped on the street and brutally attacked by four City of Long Beach (Nassau County, N.Y.) police officers — Appellees Leo J. Nolan and Vincent F. Milo, Jr., and George F. Ellert and Sergeant James Rosengrave, both now deceased. As detailed in Pearl's 1968 state court civil complaint, on August 9, 1967, he was called over to a police car by Officer Nolan. After asking Pearl a few questions, Nolan told him to get into the back of the police car. In the course of being transported to the police station, Pearl was repeatedly punched in the stomach and face by Nolan, while restrained by Officer Milo. Officer Ellert drove the car. Nolan and the other officers continued to hit and kick Pearl at the police station, causing Pearl to lose consciousness for a period of time. Pearl's injuries required a ten-day period of hospitalization and left him permanently blind in one eye.
 
 
 3
 The officers, including Appellee Arthur Whitman, testified to a different version of the episode at two state court criminal trials. They said that Pearl swore at Officer Whitman, who was on traffic patrol, as he was walking by. Officer Nolan called Pearl over to his car after hearing him swear. Pearl then swore at Nolan and, after getting into the police car, struck him. The officers (other than Whitman) used force in the car and in the station only in order to subdue Pearl.
 
 
 4
 The criminal case. The Nassau County prosecutor charged Pearl with assaulting a police officer, resisting arrest, and disorderly conduct. Pearl was initially convicted at a bench trial, but the conviction was overturned on appeal because Pearl had unconstitutionally waived his right to a jury trial, which Pearl had done in order to maintain juvenile offender status. People v. David P., 35 A.D.2d 584, 315 N.Y.S.2d 398 (2d Dep't 1970). The second trial ended in a deadlocked jury and a mistrial. At each trial, all four officers involved in the incident testified against him, as did Officer Whitman. Pearl was informed that prosecutors would proceed with a third trial.
 
 
 5
 The state court civil case. Just prior to sentencing in the first trial, Pearl and his mother, Florence Wexler, brought a civil suit in Nassau County Superior Court under 42 U.S.C. § 1983 against the City of Long Beach and Officers Nolan, Milo, and Ellert, alleging excessive force by them, and recklessness on the part of the City in allowing its officers to assault Pearl. In their pretrial depositions for the civil case, the officers again gave their account of the episode. In 1972, with the third criminal trial impending, Pearl and his mother chose to settle their civil suit. At the settlement hearing, Pearl's mother made it clear that the sole reason she agreed to settle was that the prosecutor had indicated that the criminal charges would be dropped if Pearl settled. Pearl's attorney advised that it would be an uphill battle to convince a jury in the civil trial and the impending criminal trial that four police officers were lying on the stand. Pearl also believed that his witnesses were intimidated by the police and failed to fully support his defense. Pearl and his mother agreed to settle the civil case for $30,000, an amount that did not cover his medical bills and the fees and expenses of his criminal defense. The individual police officers and the City were released with respect to "all actions and claims arising out of the incident which occurred on August 9, 1967." The City paid the $30,000.
 
 
 6
 Milo's recantation. In June 1999, Milo, one of the officers involved in the 1967 episode, submitted a sworn statement to the Nassau County District Attorney, stating that the officers' testimony in the Pearl case was fabrication. He confessed that he "never saw Pearl throw a punch or kick any of the police officers involved," and that "Nolan laid out the story as to what the reports should say."
 
 
 7
 In a second affidavit given in May 2000, Milo recounted the extent of brutality within the Long Beach Police Department: "[T]here existed a pattern of brutality [within the Department] in which not all police officers participated but in which all acquiesced"; "[b]eatings by senior officers, especially the detectives to extract confessions were common place"; he recalled other instances of suspects being beaten and that it was "nothing out of the ordinary, just standard operating procedure"; and "[b]lackjacks, clubs and rubber hoses and telephone books were all part of our `unofficial' equipment."
 
 
 8
 He also stated: "When we were sued by Mr. Pearl we insisted that the City hire as our attorney Leon Stern. He was most familiar with the facts of the case as he was allowed to be present in the Grand Jury room while the Pearl case was being present[ed]. In fact, he gave us detailed accounts of each civilian witness'[s] testimony so that we could adjust our presentation.... [H]e was `one of the boys' while an Assistant District Attorney and understood the way we operated." Milo also stated that he left the Long Beach Police Department and transferred to the Long Beach Fire Department.
 
 
 9
 Pearl's current lawsuit. Milo's first affidavit prompted Pearl to institute the instant lawsuit on January 19, 2000, asserting federal causes of action under 42 U.S.C. § 1983 and RICO, 18 U.S.C. § 1961 et seq., claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments, and state law claims. The defendants are Nolan and Milo, the two officers still living who participated in the episode, Whitman, who testified against Pearl, the City, and the Long Beach Police Department. Pearl seeks to revive claims arguably extinguished by the 1972 settlement, such as his excessive force claim against the individual officers, and also seeks to assert, purportedly for the first time, claims that he alleges became known to him only in 1999. The latter include: section 1983 claims against the officers for conspiracy to cover-up, against the City for failure to protect, and against the City based on the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); false imprisonment, intentional and negligent infliction of emotional distress and negligence under state law; fraud under state law; and a RICO claim.
 
 
 10
 Judge Wexler granted Defendants' 12(b)(6) motion, dismissing Pearl's Complaint on statute of limitations grounds. This appeal followed.
 
 Discussion
 
 11
 In section 1983 actions, the applicable limitations period is found in the "general or residual [state] statute [of limitations] for personal injury actions," Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), and the parties agree that in this case that period is three years, see N.Y. C.P.L.R. § 214(5) (McKinney 1990).[1] The Appellant contends that the three-year statute of limitations does not bar his pending lawsuit, even though it was filed 32 years after the 1967 episode, because the Appellees concealed his causes of action from him by their false statements in their official reports, and their false testimony in the two criminal trials and in depositions in the state court civil suit that was settled. As the Appellant frames his contention, the statute of limitations has been "tolled" by reason of the Appellees' fraudulent concealment. Brief for Appellant at 26-36. This contention requires consideration of several related issues: when does a cause of action accrue, what circumstances toll the running of a period of limitations after a cause of action accrues, and what circumstances estop a defendant from asserting a limitations defense? Preliminary to consideration of these issues is the choice of law question: whether state or federal law applies to their resolution.
 
 
 12
 Federal law determines when a section 1983 cause of action accrues, Heard v. Sheahan, 253 F.3d 316, 317-18 (7th Cir.2001); Harvey v. Waldron, 210 F.3d 1008, 1013 (9th Cir.2000); Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980),[2] and we have ruled that accrual occurs "`when the plaintiff knows or has reason to know of the injury which is the basis of his action,'" id. (quoting Bireline v. Seagondollar, 567 F.2d 260, 263 (4th Cir.1977)); see Pinaud v. County of Suffolk, 52 F.3d 1139, 1156 (2d Cir.1995). As the ensuing discussion will show, this concept of accrual, sometimes referred to as the "discovery rule," e.g., TRW, Inc. v. Andrews, 534 U.S. 19, 122 S.Ct. 441, 446-47, 151 L.Ed.2d 339 (2001), is related to and sometimes confused with the concept of fraudulent concealment of a cause of action.
 
 
 13
 The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its "tolling rules," Board of Regents v. Tomanio, 446 U.S. 478, 484-86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); see Keating v. Carey, 706 F.2d 377, 381-82 (2d Cir.1983), unless applying the state's tolling rules "would defeat the goals of the federal statute at issue," Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). The seemingly clear-cut bifurcation between accrual, governed by federal law, and tolling rules, governed by state law, obscures two matters. First, it is not clear from Tomanio whether in section 1983 actions we are to borrow only a state's "tolling rules" that have been incorporated into state statutes or, in addition, other aspects of a state's common law concerning avoidance of a statute of limitations that either have been labeled "tolling" or serve an equivalent function, i.e., to relieve the plaintiff from the bar of a statute of limitations. Second, it is not clear whether state or federal law applies where the circumstances governing accrual are similar, if not identical to, circumstances pertinent to a state tolling rule, a recurring issue in cases where tolling is sought on the ground of fraudulent concealment.[3]
 
 
 14
 The first matter — the scope of borrowed tolling rules — is the easier of the two. Tomanio noted that New York has by statute codified "a number of the tolling rules developed at common law," 446 U.S. at 486, 100 S.Ct. 1790, citing statutory provisions concerning the defendant's absence from the state or residence under a false name, and the plaintiff's disability such as infancy, insanity, or imprisonment, id. at 486 n. 6, 100 S.Ct. 1790 (citing N.Y. C.P.L.R. §§ 207, 208 (McKinney 1972, Supp.1979-1980)). Because the Supreme Court wanted section 1983 actions to be subject to state "tolling rules," it seems likely that both statutory and common law rules are to be borrowed. See Shropshear v. Corporation Counsel of Chicago, 275 F.3d 593, 596 (7th Cir.2001) (borrowing state common law rule of equitable tolling); Wade v. Danek Medical, Inc., 182 F.3d 281, 288-90 (4th Cir.1999) (same).
 
 
 15
 The second matter — the overlap between accrual and tolling based on fraudulent concealment — is more troublesome, in part because of the varying uses of terminology. The taxonomy of tolling, in the context of avoiding a statute of limitations, includes at least three phrases: equitable tolling, fraudulent concealment of a cause of action, and equitable estoppel. The initial difficulty encountered in trying to compare accrual, governed by federal law, with tolling, governed by state law, is that the reported decisions of the federal and state courts do not always mean the same thing by their use of these phrases, and phrases to which some judges ascribe different meanings are used interchangeably by other judges.
 
 
 16
 In the Seventh Circuit, Judge Posner has identified two "tolling doctrines": "equitable estoppel" and "equitable tolling." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir.1990); see Shropshear, 275 F.3d at 595. He uses "equitable estoppel" to mean a bar that prevents a defendant from relying on a statute of limitations as a defense where "the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." Cada, 920 F.2d at 450-51. He notes that "equitable estoppel" is sometimes called "fraudulent concealment," id. at 451, but "must not be confused with efforts by a defendant in a fraud case to conceal the fraud," id. (emphasis added). If successful, those efforts, he says, "postpone the date of accrual [and] are thus within the domain of the discovery rule," id. (citation omitted), i.e., the rule that determines when a cause of action accrues.[4] However, in his more recent discussion of the issue, he calls fraudulent concealment "one instantiation" of "equitable estoppel." Shropshear, 275 F.3d at 597. He uses "equitable tolling" to mean suspension of a statute of limitations where the plaintiff "despite all due diligence ... is unable to obtain vital information bearing on the existence of [a] claim ... [absent] a wrongful — or any — effort by the defendant to prevent the plaintiff from suing." Cada, 920 F.2d at 451. In the Third Circuit, Judge Lewis has viewed fraudulent concealment of a cause of action as one circumstance warranting "equitable tolling," Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir.1994);[5] he has regarded the discovery rule (accrual) as concerned with a plaintiff's awareness, actual or imputed, of "actual injury" and equitable tolling as concerned with awareness, actual or imputed, of "the facts supporting the plaintiff's cause of action," id. at 1390; see Forbes v. Eagleson, 228 F.3d 471, 486 (3d Cir.2000) (following terminology of Oshiver).
 
 
 17
 Our Court has used "equitable tolling" to mean fraudulent concealment of a cause of action that has "in some sense accrued earlier," see Pinaud, 52 F.3d at 1156 (characterizing the plaintiff's argument to allege that "even if [the plaintiff's claims] in some sense accrued earlier, the statute of limitations was equitably tolled by virtue of the individual defendants' fraudulent concealment of their actions"), and to mean fraudulent concealment that postpones the accrual of a cause of action, Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985) ("Under this doctrine [of equitable tolling], the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence .... The doctrine has been applied ... where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action") (internal quotation marks and citation omitted). We have also used "equitable estoppel" to mean fraudulent concealment that postpones the running of the statute of limitations, see Keating, 706 F.2d at 382 (noting that under federal law "when the defendant fraudulently conceals the wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action" and ruling that New York has adopted "the same equitable estoppel doctrine").
 
 
 18
 New York appears to use the label "equitable estoppel" to cover both the circumstances "where the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." Joseph M. McLaughlin, Practice Commentaries, N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990). See Simcuski v. Saeli, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978) (equitable estoppel because of concealment of cause of action); Kamruddin v. Desmond, 293 A.D.2d 714, 741 N.Y.S.2d 559 (App.Div. 2d Dep't 2002) (equitable estoppel because of concealment of medical records that were needed to pursue malpractice cause of action of which plaintiff was aware); Croop v. Odette, 29 Misc.2d 606, 219 N.Y.S.2d 805 (Sup.Ct. Oneida Cty.1960) (equitable estoppel because of defendant's representation that compensation would be paid without need for lawsuit), aff'd, 14 A.D.2d 724, 218 N.Y.S.2d 532 (4th Dep't 1961); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma, 161 Misc.2d 423, 432, 613 N.Y.S.2d 811, 816 (Sup.Ct.N.Y.Cty.1994) (equitable tolling concerns when statute of limitations begins to run), rev'd on other grounds, 218 A.D.2d 572, 630 N.Y.S.2d 724 (1st Dep't 1995). In other states, concealment is sometimes referred to as "equitable tolling," e.g., Snapp & Associates Insurance Services, Inc. v. Robertson, 96 Cal.App.4th 884, 890-91, 117 Cal.Rptr.2d 331, 334-35 (2002), or simply the reason that the statute of limitations is "tolled," e.g., Walk v. Ring, 202 Ariz. 310, ___, 44 P.3d 990, 999 (2002), and at least one state uses "tolling" to concern both accrual and stopping of the statute of limitations, see Major League Baseball v. Morsani, ___ Fla. ___, ___, 790 So.2d 1071, 1079 (2001) ("Tolling, strictly speaking, is concerned with the point at which the limitations period begins to runs and with the circumstances in which the running of the limitations period may be suspended.").
 
 
 19
 Bearing in mind this variety of terminology, we discern a split of authority as to whether tolling based on fraudulent concealment should be governed by state or federal law. Compare Emrich v. Touche Ross & Co., 846 F.2d 1190, 1199 (9th Cir. 1988) ("Where a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions, to the extent these are consistent with federal law."), and Rotella v. Pederson, 144 F.3d 892, 897 (5th Cir.1998) (state tolling rule of concealment applies whether or not "consistent with the federal tolling provisions"), with Shropshear, 275 F.3d at 598 ("[I]n a case such as this, where the federal court is applying a (borrowed) state statute of limitations, the federal doctrine of equitable estoppel [meaning fraudulent concealment], not the state doctrine, controls."), and Farmers & Merchants National Bank v. Bryan, 902 F.2d 1520, 1522 (10th Cir.1990) ("When plaintiffs' causes of action accrued and whether the statute of limitations was equitably tolled [by a form of concealment] ... remained questions of federal law."). The First Circuit has stated that "[e]ven when a federal court borrows a state's statute of limitations, the court applies federal equitable estoppel principles," and has recognized, but not decided, the issue of whether state rules of equitable tolling apply. See Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 63 (1st Cir.1998).
 
 
 20
 In our Circuit, Keating appears to regard concealment as a tolling rule to which borrowed state law applies,[6] see Keating, 706 F.2d at 382, but the opinion is not clear on this point, and the issue was of no consequence because the federal accrual and the state tolling rules were the same, see id.
 
 
 21
 Whether concealment of a cause of action postpones accrual of a cause of action and is therefore a matter of federal law or whether, in New York, where it is an example of equitable estoppel, it is one of the state "tolling rules" we are to borrow in section 1983 actions (which seems the more likely alternative after Keating), the analysis of Pearl's claims is unaffected, because, as discussed below, his current claims are barred whether the issue is viewed as one of delayed accrual or tolling. And the outcome is unaffected no matter which of the tolling concepts is applicable. Because Pearl casts his argument in terms of "equitable tolling," by which he means fraudulent concealment of a cause of action, we will use that phrase in discussing all aspects of his contention.
 
 
 22
 In the pending case, we clearly borrow New York's rule of tolling during infancy, see N.Y. C.P.L.R. § 208 (McKinney 1990), and therefore the statute of limitations ran on Pearl's section 1983 claims on September 29, 1971, three years after his eighteenth birthday. Citing primarily federal case law,[7] Pearl invokes the doctrine of equitable tolling and contends that the limitations period has been tolled because the police officers who testified against him lied about the 1967 episode, giving a false version that Officer Nolan had concocted for them. Brief for Appellant at 26-36.
 
 
 23
 The tolling issue arises in this case in an unusual context. Unlike typical tolling cases in which the plaintiff contends that fraudulent concealment prevented him, even in the exercise of due diligence, from acquiring sufficient awareness of a cause of action to permit the timely filing of a lawsuit, see, e.g., Simcuski, 44 N.Y.2d at 448-51, 406 N.Y.S.2d at 262-64, 377 N.E.2d 713, Pearl initiated a suit against the police officers and the City of Long Beach, and that suit was settled. He now seeks to overcome the obstacle of that settlement by seeking to have the settlement vacated on the ground that it was procured by fraud, i.e., the officers' false testimony, which, he contends, induced him to settle on unfavorable terms. Even if fraud against the Appellant or a fraud upon the state court warranted ignoring the prior litigation, see Griffith v. Bank of New York, 147 F.2d 899, 901 (2d Cir.1945), Pearl would still have to demonstrate that the circumstances permit him to sue the officers and the City 32 years after the episode.
 
 
 24
 In considering the doctrine of equitable tolling in the context of a prior lawsuit allegedly concluded disadvantageously because of fraud, we find no pertinent New York decision. Although we have not previously encountered such circumstances, our own case law provides useful guidance. In applying the doctrine of equitable tolling, we have made an important distinction between fraudulent concealment of the existence of a cause of action and fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware. See Paige v. Police Department of Schenectady, 264 F.3d 197, 200 (2d Cir.2001). Thus, in Paige, we acknowledged that a limitation period could be tolled by fraudulent concealment of a cause of action in a section 1983 police brutality suit, but ruled that the suit was time-barred because the plaintiff had enough information when she became an adult to bring her claim. Id. at 199-200. "Although some of the facts putatively concealed by the defendants might have strengthened [the plaintiff's] case by corroborating her story, we find that the absence of those facts did not sufficiently justify [the plaintiff] in not pursuing her cause of action as to merit equitable tolling." Id. at 200. If state law tolling principles apply, we have no reason to think that New York, whose tolling rules we have termed "less liberal" for plaintiffs than those of federal law, see Saylor v. Lindsley, 391 F.2d 965, 970 (2d Cir.1968), would not make the same distinction we made in Paige.
 
 
 25
 Although we have broadly stated, as Pearl notes, that we will apply the equitable tolling doctrine "as a matter of fairness" where a plaintiff has been "prevented in some extraordinary way from exercising his rights," Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 24 (2d Cir.1985), we made it clear that we had in mind a situation where a plaintiff "could show that it would have been impossible for a reasonably prudent person to learn" about his or her cause of action. Id. (emphasis added); see Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir.1996).
 
 
 26
 Claims against the police officers. Thus understood, the doctrine of equitable tolling, as Pearl calls it, or equitable estoppel, as New York calls it, does not permit Pearl to sue the individual police officers at this late date. Pearl was obviously aware of his cause of action for police brutality at the time of the 1967 episode and not only could have sued the officers, but did so. Even if we assume that the alleged fraud of the officers in concocting a false account of the episode would provide a basis for setting aside the 1972 settlement of Pearl's state court civil suit, see Griffith, 147 F.2d at 901, a renewed assertion of his claims against the officers would be time-barred. Although the police officers' allegedly false testimony in Pearl's two criminal trials and in the depositions for his state court suit undoubtedly induced Pearl and his mother to settle that suit for a modest sum, the facts of the episode, as he now alleges them to be, were fully known to Pearl in 1967. What he has now, like the plaintiff in Paige, is more persuasive evidence, not newly developed awareness of a previously concealed cause of action.
 
 
 27
 Although Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir.1984), where equitable tolling was permitted, id. at 1220-31, involves police misconduct somewhat similar to what Pearl alleges, the rationale for the Seventh Circuit's decision reveals why such tolling is not available to Pearl. In Bell, as is alleged here, police officers perjured themselves on the stand as to the circumstances of a shooting that caused the victim's death, and a police officer who participated in the episode came forward years later with a recantation. The central fact underlying the decision in Bell, however, was that, because Daniel Bell was killed by the officers, his family lacked specific, first-hand information about what had occurred. They were aware of the death, but not of the facts that made the death actionable. Although Bell's family did not believe the reports and testimony relating to the shooting, the family had no basis for knowing or proving what actually happened because Bell did not survive to tell his version of the episode. As the Seventh Circuit later explained, "the conspiracy had prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiffs' right of access." Vasquez v. Hernandez, 60 F.3d 325, 329 (7th Cir.1995). Moreover, in Bell, the Court of Appeals quoted extensively from the District Court's view of what it considered "`the applicable and binding [Wisconsin] state rule of law on the application of the doctrine of estoppel by fraudulent concealment [, which considers] whether the defendants' conduct and representations were so unfair and misleading as to outbalance the public's interest in setting a limitation on an action.'" 746 F.2d at 1231 (quoting Bell v. City of Milwaukee, 514 F.Supp. 1363, 1371 (E.D.Wis.1981)). Neither New York case law nor ours adopts such an expansive approach to equitable tolling.
 
 
 28
 Also superficially similar but ultimately distinguishable is Yeadon v. New York City Transit Authority, 719 F.Supp. 204 (S.D.N.Y.1989), a class action brought by individuals who had been subject to false arrests by the officers of the New York City Transit Authority. An internal investigation later revealed that officers who sought to improve their arrest records routinely accused innocent, disproportionately Black and Hispanic, subway riders of petty crimes (such as pickpocketing) and initiated prosecutions against them. Id. at 208. The officers typically told the accused that another passenger had witnessed the offensive act and had initiated the arrest, and that the witnesses would testify at their trial. Id. at 209. The District Court denied the defendant police officers' motion for summary judgment on statute of limitations grounds. Id. at 213. Although, as here, each plaintiff would have known that he or she had been falsely arrested, the Court based its decision on the fact that, at least for purposes of summary judgment, the record did not rule out the possibility that the fraudulent nature of the arrests was not readily apparent to the victims. Given the nature of the crime for which they were arrested — pickpocketing — it would have been highly plausible to them that the alleged "witnesses" actually existed, but had misperceived what had taken place. As the Court explained:
 
 
 29
 Witness misperception may have seemed particularly plausible to the arrestees because the cramped conditions of New York City subways invite erroneous perception of "sexual abuse," offensive rubbing, and "jostling," movement of the hand toward a pocket or purse of another, the two crimes of which every plaintiff was accused. Because plaintiffs may not have had any information to arouse suspicion about the basis for their arrests, their causes of action would not have begun to run until they acquired that information ....
 
 
 30
 Id. at 210 (citing Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.1982)). Whether or not we would adopt the ruling in Yeadon, Pearl's claim does not depend on what other witnesses might reasonably have perceived and reported to the police.
 
 
 31
 Pearl endeavors to obtain the benefit of equitable tolling by alleging a conspiracy among the police officers to present false testimony against him and contending that, even though he knew the true facts of the 1967 episode, he did not know until receiving the Milo affidavit that he had a cause of action against the officers for conspiracy to cover up their misconduct. In Dory v. Ryan, 999 F.2d 679 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir.1994), we relied on equitable tolling to permit an otherwise time-barred complaint alleging conspiracy to falsify evidence to survive a motion to dismiss. The plaintiff alleged that, several years after his conviction for selling narcotics, he obtained an affidavit from a prosecution witness who alleged that the prosecutor had prevailed upon him to testify falsely at the criminal trial. The plaintiff alleged that the prosecutor and a police officer who testified at trial "had entered into an extra-judicial conspiracy to convict [him] based on perjured testimony." Id. at 680. In ruling that equitable tolling was available, for the purpose of testing the sufficiency of the complaint, we observed that "as a prisoner, [the plaintiff] could not possibly have known about the alleged conspiracy until it was revealed to him." Id. at 681.
 
 
 32
 Dory does not aid Pearl. Although Dory knew all along what he claimed the true facts were concerning his lack of criminal culpability and must have thought at the time of trial that the police officer and the recanting witness were lying, he had no basis for knowing that their false testimony resulted from a conspiracy between the prosecutor and the police officer. By contrast, Pearl makes no allegation that the allegedly false testimony presented against him resulted from a conspiracy between, on the one hand, the testifying police officers and, on the other hand, any other official about whose involvement he was unaware. Indeed, Milo's affidavit precludes such a possibility; he avers that the plan to present false testimony originated with Officer Nolan, one of the police officers Pearl contends testified falsely.
 
 
 33
 Nor can Pearl now assert a previously concealed cause of action by pointing to a conspiracy among the four police officers who testified against him. Knowing what he contends the true facts were, he had reason to believe they were lying, and, because their versions were identical, it was a reasonable inference that the officers had agreed to present their allegedly false versions. We have previously ruled that accrual of a cause of action based on specific acts of which a plaintiff was aware cannot be postponed, nor can a limitations period be tolled, simply by alleging that the acts were taken pursuant to a conspiracy. See Pinaud, 52 F.3d at 1156-58; Singleton, 632 F.2d at 192-93.
 
 
 34
 Pearl cannot validly claim concealment of his causes of action against the police officers, whether based on section 1983, RICO, or state law.
 
 
 35
 Claims against the City of Long Beach. Pearl's awareness of his causes of action against the police officers also precludes application of equitable tolling (or equitable estoppel) to most of his claims against the City of Long Beach. Aware of the injuries that the officers inflicted upon him, he was similarly aware of his currently alleged state law causes of action against the City based on respondeat superior and alleged negligent training and supervision of the officers. Complaint, Claims 10, 11. The one cause of action now alleged of which Pearl was not aware until he received the second Milo affidavit is what he labels his "Monell Claim": that his injuries resulted from a municipal policy of failing to "control police officers engaged in the excessive and unjustified use of force" and maintaining a "police code of silence wherein police officers regularly coverup police use of excessive and unjustified force by telling false and incomplete stories ... in sworn testimony ...." Complaint, Claim 4. In that affidavit Milo stated that there existed in the Long Beach Police Department "a pattern of brutality in which not all police officers participated but in which all acquiesced." Although not explicitly alleging a policy of encouraging false testimony, Milo's statement that "you learned quickly to look the other way and not to open your mouth" adequately supports the allegation of the Complaint that the City's policy included providing false testimony.
 
 
 36
 At the outset of our consideration of tolling with respect to this claim of a municipal policy, we note that the "municipal policy" cause of action that Pearl alleges was not recognized until 1978 when the Supreme Court decided Monell. The Court there slightly modified the insulation of municipalities from suits under section 1983, see Monroe v. Pape, 365 U.S. 167, 187-92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), by ruling that a municipality could be held liable for constitutional torts committed pursuant to a municipal custom or policy. Monell, 436 U.S. at 694, 98 S.Ct. 2018; see City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion). We have rejected the claim that a Monell claim did not accrue until the date of the Monell decision. Fiesel v. Board of Education, 675 F.2d 522, 524 (2d Cir.1982). But Pearl is not seeking delayed accrual until the date of Monell; his equitable tolling argument based on fraudulent concealment of his Monell claim seeks either accrual of that claim until discovery of Milo's affidavits or tolling of that claim, if it is viewed as accruing earlier.
 
 
 37
 It is a fair question whether a cause of action can be said to be concealed for purposes of equitable tolling when it did not exist at the time the plaintiff's injuries were inflicted or when the limitation period for redressing those injuries expired. We acknowledge, however, that there is some force to Pearl's contention that, notwithstanding the date when Monell was decided, he should benefit from equitable tolling if he can demonstrate that the defendants prevented him from advancing the claim that was ultimately upheld in Monell. But for the defendants' concealment, he contends, he could have been the first to establish the Monell rule.
 
 
 38
 As with so much of Pearl's argument, the surface attractiveness of his position disappears upon closer examination of the case law that has developed concerning the doctrine of equitable tolling or estoppel to plead a limitations defense. New York has made it clear that, in the absence of a fiduciary relationship between the wrongdoer and the victim, an estoppel barring a limitations defense will not arise unless there has been "active fraudulent concealment" by the wrongdoer. Riley v. State, 105 A.D.2d 1104, 1105, 482 N.Y.S.2d 626, 628 (4th Dep't 1984); see Gleason v. Spota, 194 A.D.2d 764, 765, 599 N.Y.S.2d 297, 299 (2d Dep't 1993). Federal courts impose a similar requirement. See Davis v. Grusemeyer, 996 F.2d 617, 624 n. 13 (3d Cir.1993) (fraudulent concealment claim inadequately pled because plaintiff "failed to allege active concealment" by any defendant); Welch v. Cadre Capital, 923 F.2d 989, 993 (2d Cir.1991); Baskin v. Hawley, 807 F.2d 1120, 1130-31 (2d Cir.1986).
 
 
 39
 Pearl has made no showing that the City of Long Beach actively concealed from him the existence of a municipal policy concerning either police brutality or false testimony concerning such misconduct. If he aspired to anticipate Monell, due diligence required him at least to use the generous provisions of federal discovery rules to obtain information concerning other episodes similar to his that might have sufficed to support a claim of a municipal policy.[8] In the absence of such inquiry, he cannot point to any misrepresentation by City officials that amounts to "active fraudulent concealment" of what might have become a pioneering Monell cause of action. Pearl's allegations of false testimony by the police officers bear at most on thwarting successful pursuit of his claims concerning the episode in which he was involved; the officers were not asked about and did not misrepresent with respect to municipal policy or custom.
 
 Conclusion
 
 40
 In the face of the unusual circumstance of a former police officer coming forward to recant his own prior testimony and to admit that he and other officers lied in an attempt to convict David Pearl and to deny him a fair civil recovery for his serious injuries, we take no pleasure in ruling that the statute of limitations remains an insuperable obstacle to his effort to obtain adequate compensation for the brutality inflicted upon him 35 years ago. But we are obliged to uphold the policies animating the applicable statute of limitations, see Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), and to apply faithfully the limited exceptions to those policies recognized by applicable law, whether federal law of accrual or state law of tolling. The result seems harsh, given the apparent persuasiveness of Milo's recantation, yet we know of no basis in federal or New York law to make an exception to accommodate Pearl's claims, just because he now appears to have much stronger evidence than he had in 1967. There are undoubtedly other plaintiffs who lost at trial or settled for modest amounts in the face of evidence they now believe they can successfully impeach. It is unlikely that many of these plaintiffs now have a recanting police officer on their side. More likely, their basis for impeachment of their adverse outcomes is far less substantial. To reopen all such claims might compensate a few deserving plaintiffs, but it would also put at risk many blameless defendants who could not fairly defend after expiration of the interval the state legislature has determined is appropriate.
 
 
 41
 The absence of an available judicial remedy, however, does not necessarily mean that David Pearl has no recourse. Courts are not the only forum for redress of grievances. Our ruling today does not prevent the City of Long Beach from making such inquiry as it deems appropriate into the circumstances that led to Pearl's loss of sight in one eye, and providing whatever compensation it concludes is warranted.
 
 
 42
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 A four-year statute of limitations is applicable to claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961et seq. See Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Even if RICO applied to Pearl's claims, the extra one year would not affect our disposition of this appeal.
 
 
 [2]
 It is arguable that because section 1983 is to "be read against the background of tort liability" for purposes of holding a defendant responsible "for the natural consequences of his actions,"Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and for purposes of good faith immunity, Pierson v. Ray, 386 U.S. 547, 556-57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), accrual of a section 1983 cause of action should also be a matter of state law. However, it is well settled under our precedents that accrual is a matter of federal law. However, it is well settled under our precedents that accrual is a matter of federal law. See, e.g., Keating v. Carey, 706 F.2d 377, 382 (2d Cir.1983); Singleton, 632 F.2d at 191.
 
 
 [3]
 The significance of fraudulent concealment to a plaintiff's entitlement to sue was recognized by the Supreme Court as early as 1874, when the Court ruled that in an equitable action based on fraud, "where the ignorance of the fraud has been produced by affirmative acts of the guilty part in concealing the facts from the other, the statute [of limitations] will not bar relief" if suit is promptly brought after discovery of the fraudBailey v. Glover, 88 U.S. (21 Wall.) 342, 347-48, 22 L.Ed. 636 (1874) (W.H. & O.H. Morrison 1875). The Court appears to have considered the matter one of accrual because it went on to note that where a party injured by fraud remains ignorant of the fraud through no fault of its own, "the statute does not begin to run until the fraud is discovered," even though there has been no concealment of the fraud by the other party. Id. at 348 (emphasis added). The Court subsequently invoked this doctrine in equitable actions to enforce federal rights. See Holmberg v. Armbrecht, 327 U.S. 392, 396-97, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Whether considered a matter of accrual or a matter of some form of equitable relief from a limitations bar, federal courts have applied the doctrine that originated with Glover and Holmberg to federal causes of action at law other than fraud, see, e.g., Pinaud, 52 F.3d at 1157-58 (false arrest and malicious prosecution); Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48-49 (2d Cir.1985) (age discrimination); Keating, 706 F.2d at 381-82 (discrimination based on political affiliation); Barrett v. United States, 689 F.2d 324, 327-30 (2d Cir.1982) (Federal Tort Claims Act), and, pertinent to the instant case, to claims of police misconduct brought under section 1983, see Bell v. City of Milwaukee, 746 F.2d 1205, 1228-34 (7th Cir.1984).
 
 
 [4]
 It is not clear whether Judge Posner views "fraudulent concealment" as postponing accrual only in fraud cases, to which he explicitly refers, or in any case in which a defendant conceals a cause of action
 
 
 [5]
 Other circumstances noted in the Third Circuit to warrant equitable tolling are "where the plaintiff in some extraordinary way has been prevented from asserting his or her rights" and "where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."Oshiver, 38 F.3d at 1387 (citing School District of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir.1981)).
 
 
 [6]
 Keating first stated the federal rule concerning concealment that postpones the accrual of a cause of action and then, "[b]orrowing" the state tolling rule, noted that the state had "adopted the same equitable estoppel doctrine." Keating, 706 F.2d at 382.
 
 
 [7]
 The Appellant also citesMcCabe v. Gelfand, 57 Misc.2d 12, 291 N.Y.S.2d 261 (N.Y. Sup. Ct. 1968), which ruled that a claim of concealment of a fraud presented a disputed issue of fact.
 
 
 [8]
 InYeadon, where the District Court permitting tolling of a limitations period because of concealment of a Monell claim, the Court found that the defendants "dodged discovery requests that would have disclosed the false arrest scheme," and "repeatedly represented to plaintiffs that complaining witnesses had initiated the arrests, and that the witnesses would appear in court to prosecute," which the Court determined "kept [the plaintiffs] from discovering the pattern of which those arrests were a part." Yeadon, 719 F.Supp. at 208-10.