20-3587-cv
*Busher v. Barry*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of November, two thousand twenty-one.

PRESENT:    Dennis Jacobs,
            Steven J. Menashi,
                    *Circuit Judges*
            Lewis A. Kaplan,
                    *District Judge.*[*]

_____

MEREDITH    BUSHER,    as    Co-Personal
Representative of the Estate of Eugene L. Busher,
ELLEN BUSHER, as Co-Personal Representative
of the Estate of Eugene L. Busher, NANCY
TUMPOSKY,

         *Plaintiffs-Appellants*,

_____

[*] Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

EUGENE L. BUSHER,

     *Plaintiff*,

     v.

DESMOND T. BARRY, JR., THOMAS T. EGAN,
JOHN P. HEANUE, WILLIAM M. KELLY,
FRANCIS P. BARRON, WINGED FOOT GOLF
CLUB, INC.,

     *Defendants-Appellees*,

WINGED FOOT HOLDING CORPORATION,

     *Nominal Defendant-Appellee*.

No. 20-3587-cv

_____

| | |
|---|---|
| *For Plaintiffs-Appellants*: | JOHN HALEBIAN, Lovell Stewart Halebian Jacobson LLP (Adam C. Mayes, Lovell Stewart Halebian Jacobson LLP, Sanford F. Young, Law Offices of Sanford F. Young, P.C., *on the brief*), New York, NY. |
| *For Defendants-Appellees*: | MAEVE O'CONNOR (David Sarratt, Susan Reagan Gittes, Laura J. Samuels, Morgan A. Davis, Aasiya F.M. Glover, *on the brief*), Debevoise & Plimpton LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Román, J.).

2

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the appeal of the denial of partial summary judgment is **DISMISSED,** and the judgment of the district court is **AFFIRMED.**

The district court dismissed this shareholder derivative action brought on behalf of nominal defendant Winged Foot Holding Corporation ("WFHC"), a New York business corporation that owns the 280-acre property operated by the Winged Foot Golf Club (the "Club"), a nonprofit membership corporation. The plaintiffs asserted claims on behalf of WFHC against certain current and former WFHC directors as well as against the Club, which is WFHC's majority and controlling shareholder. The plaintiffs alleged that the Club, in concert with the defendant directors, contrived to create a "sweetheart" long-term lease under which the Club and its members enjoyed the exclusive use of WFHC's property for a nominal rent that wasted and misappropriated WFHC's sole asset for the benefit of the Club and its members—and to the detriment of WFHC and its shareholders. The district court dismissed the majority of the plaintiffs' claims, concluding that the plaintiffs failed to establish a basis for tolling the statute of limitations on their otherwise untimely claims and that the fraud discovery rule did not apply. The district court further concluded that questions of material fact

3

remained on the plaintiffs' only timely claims, which challenged a 2013 lease extension. However, the plaintiffs voluntarily dismissed those claims before trial.

This diversity case is governed by settled principles of New York law. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I

In 1921, members of the New York Athletic Club started organizing a golf club. The organizers incorporated two separate entities. WFHC was incorporated under New York's Business Corporation Law; the Club was incorporated under New York's Membership Corporations Law. WFHC's certificate of incorporation authorized issuance of 600 shares of stock, and the Club's bylaws established a membership of 600 and required each member to acquire one of WFHC's 600 shares. After the formation of these entities, the organizers filed the respective certificates of incorporation with the New York Secretary of State.

WFHC used the proceeds from the sale of its 600 shares to purchase 280 acres of land and to build two golf courses and a clubhouse. WFHC and the Club then executed a long-term lease in 1924. The lease did not require the Club to pay any fixed rent. Instead, the Club was to invest its earnings in improvements to the

4

land and to turn over any remaining profits after expenses to WFHC. Under the lease, the Club received an initial term of 21 years with the option to renew on the same terms for another two 21-year terms.

In 1947, the original lease was amended. Instead of a variable rent obligation, the 1947 lease established a fixed annual rent of $30,000. The parties then renewed the lease under the same terms as the 1947 lease in 1974 (for a lease that would run from 1987 to 2008), 1984 (for 2008 to 2029), 2002 (for 2029 to 2050), and, most recently, 2013 (for 2050 to 2071).

The Club also made changes to the rules governing members' ownership of WFHC stock. Club membership fell during the Great Depression, putting financial pressure on the Club. To increase income, the Club authorized "yearly" memberships that did not require purchase of WHFC stock sometime in the 1930s. In 1949, the Club eliminated individual stockholding as a requirement for any category of membership. Throughout the 1940s, the Club intermittently purchased shares from former members or their heirs for nominal amounts. By 1983, the Club had acquired a majority of WFHC shares (302), a fact that was disclosed in WFHC's and the Club's consolidated financial statements.

## II

On June 16, 2014, Plaintiff Eugene Busher brought this derivative action against WFHC's current board of directors, the Club, and WFHC itself as a nominal defendant. The complaint asserted claims for damages for the allegedly wasteful leases and for the Club's alleged scheme to entrench its control of WFHC by buying WFHC shares. The complaint alleged that WFHC had been formed as an investment vehicle to pursue shareholder profits, and therefore the below-market lease agreements with the Club breached the directors' fiduciary duties. The Club was implicated because, according to the complaint, it facilitated these wasteful deals by gaining control over WFHC.

The defendants answered the original complaint and then moved for summary judgment on the grounds of laches, acquiescence, and estoppel. The district court ruled that summary judgment was inappropriate because, among other things, there were issues of fact about whether the defendants breached a fiduciary duty to Busher. *See Busher v. Barry (Busher I)*, No. 14-CV-4322, 2016 WL 1249612 (S.D.N.Y. Mar. 28, 2016). The defendants filed a motion for reconsideration, which the district court denied. *See Busher v. Barry (Busher II)*, No. 14-CV-4322, 2016 WL 2742428 (S.D.N.Y. May 10, 2016).

6

After fact and expert discovery, Plaintiffs Meredith and Ellen Busher—who were substituted as representatives of their late father's estate—and Nancy Tumposky, who inherited an interest in a share, filed an amended complaint. The amended complaint alleged claims for breach of fiduciary duty against the directors under New York law, common law breach of fiduciary for waste and misappropriation against both the directors and the Club, unjust enrichment against the Club, and aiding and abetting the breach of fiduciary duty against the Club. The amended complaint also sought common law dissolution of WFHC. Based on allegations that the defendants had fraudulently concealed the for-profit purpose of WFHC, the amended complaint asserted that the defendants were equitably estopped from raising the statute of limitations as an affirmative defense.

The plaintiffs moved for partial summary judgment on liability for their breach of fiduciary duty claims. The defendants cross-moved for summary judgment, arguing that (1) the claims that had accrued before June 16, 2008, were barred by the applicable statute of limitations and (2) claims that accrued after that date were barred by the doctrines of waiver, acquiescence, and estoppel.

The district court granted the defendants' cross-motion on the issue of the statute of limitations, holding that the plaintiffs had failed to meet their burden of creating a question of material fact sufficient to toll the statute of limitations under either the doctrine of equitable estoppel or New York's fraud discovery rule. The district court found that there was "no genuine dispute that there were storm warnings" that would have put shareholders on inquiry notice of the facts underlying the plaintiffs' claims decades before the suit was filed. Special App'x 11. Because the claims were subject to a six-year statute of limitations, the district court held that "claims arising from conduct before June 16, 2008 are barred by the statute of limitations," and the only conduct left to consider on the merits was "the 2013 lease extension." *Id.* at 13.

The district court denied the plaintiffs' motion for partial summary judgment, concluding that there was a genuine dispute of material fact about the purpose of WFHC at the time of the 2013 lease extension.

Before trial began, however, the plaintiffs moved to voluntarily dismiss their remaining claims—those related to the 2013 lease renewal—with prejudice. After notice and a hearing at which no shareholder objected to the dismissal, the district court entered final judgment.

8

The plaintiffs now appeal the district court's order granting the defendants' cross motion for summary judgment on the statute of limitations issue. They argue that the district court erred because it dismissed claims that accrued within the statute of limitations period and failed to toll their untimely claims. The plaintiffs also purport to appeal the district court's denial of their motion for partial summary judgment.

**III**

"We review grants of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party." *Higgins v. Metro-N. R. Co.*, 318 F.3d 422, 425 (2d Cir. 2003). "Summary judgment is warranted only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *MacKenzie-Childs Ltd. v. MacKenzie-Childs*, 477 F. App'x 836, 839 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). In determining whether there are genuine issues of material fact, "we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

**A**

The district court did not erroneously dismiss any timely claims. It correctly held that—other than claims related to the 2013 lease extension—the plaintiffs' claims were barred by the statute of limitations.

On appeal, the plaintiffs recharacterize some of the claims as arising from events within the limitations period. We need not reach the merits of these arguments because the arguments were not raised before the district court. Because the plaintiffs failed to "raise this argument in [their] opposition to summary judgement," the "argument has been waived." *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004).

Even if the arguments had not been waived, the plaintiffs would not prevail. First, the plaintiffs claim to have a timely unjust enrichment claim against the Club related to the 2029-2050 lease renewal option. Although WFHC granted this lease renewal option to the Club in 2002, the plaintiffs argue that the claim accrued only when the Club exercised the option in 2013. But "a claim for unjust enrichment accrues upon the occurrence of the alleged wrongful act giving rise to restitution." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 171 (2003). The wrongful act identified in the amended complaint occurred—at the latest—in 2002, when, allegedly acting for

10

the benefit of the Club and to the detriment of the shareholders, WFHC granted another lease extension option to the Club.

Next, the plaintiffs claim to have timely claims based on the directors' failure to rescind the allegedly wasteful leases. The plaintiffs identify no authority for the proposition that a claim for breach of fiduciary duty may arise from a director's failure to rescind a contract that was executed outside the limitations period. If such a claim were allowed, there would effectively be no statute of limitations for directors' actions. We do not think the New York Court of Appeals would recognize such a claim. *See In re Elm Ridge Assocs.*, 234 F.3d 114, 121 (2d Cir. 2000) (noting that we must "predict how the highest court of the state would resolve" an issue) (alteration omitted).

The plaintiffs also claim to have timely claims that arose from the defendants' alleged breaches of fiduciary duty relating to the Club's acquisition of WFHC shares. The amended complaint suggests that the acquisitions were part of scheme to take control of WFHC. Any claims based on this purported scheme, however, would have accrued by 1983, when the Club acquired a majority of WFHC shares.

Finally, the plaintiffs argue that their claim seeking a declaration that the 1947 lease amendment and subsequent lease options are void is not subject to a statute of limitations defense. But "[a]n action for a declaratory judgment is generally governed by a six-year limitations period." *Town of Hempstead v. AJM Capital II, LLC*, 13 N.Y.S.3d 199, 201 (2d Dep't 2015). This rule extends to actions seeking a declaration that a corporate transaction is void. In *Kassab v. Kassab*, for example, the Appellate Division held that a claim seeking a judgment declaring an option agreement void was governed by a six-year limitations period. 29 N.Y.S.3d 39, 41-42 (2d Dep't 2016).[1]

In sum, the district court properly held that the only claims that fell within the limitations period were those related to the 2013 lease extension.

**B**

We find no error in the district court's holding that the plaintiffs' untimely claims are not saved by equitable estoppel.

---

[1] The plaintiffs' reliance on *Faison v. Lewis*, 25 N.Y.3d 220 (2015), is misplaced. *Faison* stands for the limited proposition that "a claim against a forged deed is not subject to a statute of limitations defense." *Id.* at 224.

12

We distinguish between the federal doctrine of equitable tolling, which "is not available in state causes of action in New York," *Jang Ho Choi v. Beautri Realty Corp.*, 135 A.D.3d 451, 452 (1st Dep't 2016), and the New York doctrine of equitable estoppel. We have "used 'equitable tolling' to mean fraudulent concealment of a cause of action that has 'in some sense accrued earlier,' and to mean fraudulent concealment that postpones the accrual of a cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (citation omitted). New York, in contrast, "appears to use the label 'equitable estoppel' to cover both the circumstances 'where the defendant conceals from the plaintiff the fact that he has a cause of action and where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.'" *Id.* (alteration omitted). Equitable estoppel "applies where it would be unjust to allow a defendant to assert a statute of limitations defense" because "the defendant's affirmative wrongdoing … produced [a] long delay between the accrual of the cause of action and the institution of the legal proceeding." *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006). In particular, equitable estoppel prevents a defendant from asserting a statute-of-limitations defense under New York law "where [a] plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a

13

timely action" and the plaintiff demonstrates "reasonable reliance on the defendant's misrepresentations." *Id.* at 674.

The plaintiffs here argue that the defendants prevented them from discovering their claims for breach of fiduciary duty by failing to disclose generally that "WFHC had a for-profit business purpose inconsistent with subordination to the Club" and by asserting the contrary at various times. Plaintiffs-Appellants' Br. 40-43. Even assuming that the defendants did so, however, the defendants' actions did not prevent the plaintiffs' predecessors in interest from knowing of WFHC's for-profit business purpose and from bringing a timely suit. On the plaintiffs' own theory of the case, WFHC's certificate of incorporation—which was filed publicly in 1921—established "as a matter of law that WFHC had a for-profit business purpose." *Id.* at 45. Meanwhile, the 1947 lease amendment—which changed the Club's rent from its entire net income to a fixed annual payment of $30,000—conflicts with any such for-profit purpose. Even if the 1947 lease amendment itself was not publicly accessible, board minutes taken at that time stated that "it was always contemplated" that WFHC's holding of the land "would be at all time[s] for the benefit of the Golf Club." And the notes to the consolidated financial statements for 1983 communicated that the Club "now

14

owns more than 50% of the outstanding stock of [WFHC]." These materials, among others in the record, make obvious the possibility that WFHC was not being operated at arms' length from the Club or to generate profits for shareholders, regardless of the defendants' purported misrepresentations about WFHC's corporate purpose. On the plaintiffs' theory, then, the alleged breaches of duty by the WFHC directors have been apparent for 74 years.

It would not have been reasonable for the plaintiffs' predecessors in interest to rely on the defendants' purported concealment of WFHC's for-profit purpose in failing to bring their action because relevant facts that, according to the plaintiffs, establish their claims were publicly available. The district court accordingly did not err in holding that the defendants are not equitably estopped from asserting the statute of limitations.[2]

---

[2] Similarly, the district court held that the fraud discovery rule, N.Y.C.P.L.R. § 213(8)—which is not at issue on this appeal—did not apply to the plaintiffs' claims because "there is no genuine dispute that" the plaintiffs were on inquiry notice of those claims. Special App'x 10-13. In so holding, the district court concluded that "there is no genuine dispute that there were storm warnings that would have caused a reasonable person to investigate" the facts underlying the untimely claims. *Id.* at 11.

## C

The plaintiffs ask us to review the district court's order denying their motion for partial summary judgment, which held that there were triable issues of fact regarding WFHC's purpose. We dismiss this part of the appeal for lack of jurisdiction.

We generally will not review an order denying summary judgment. *See DiStiso v. Cook*, 691 F.3d 226, 239 (2d Cir. 2012) ("[T]he denial of a motion for summary judgment is generally not appealable."). "That order 'retains its interlocutory character,' and therefore we lack jurisdiction to review it on appeal." *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 251 (2d Cir. 2021) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011)).

Here, however, the plaintiffs argue that we have appellate jurisdiction because they followed a "well settled" path to appeal: there was an adverse decision that dismissed some of their claims and they voluntarily dismissed their remaining claims. Plaintiffs-Appellants' Reply Br. 21. To be sure, "a party who loses on a dispositive issue that affects only a portion of his claims may elect to abandon the unaffected claims, invite a final judgment, and thereby secure review of the adverse ruling." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 89-90 (2d Cir. 2013)

16

(alteration omitted). But in such a scenario, we have jurisdiction to review claims that the district court dismissed, not the claims that the party voluntarily abandons. Here, the district court denied summary judgment as to claims related to the 2013 lease extension because it determined there was a genuine dispute of material fact as to whether WFHC's primary purpose was to pursue profits or to support the Club. The plaintiffs then voluntarily dismissed these remaining claims with prejudice. In this situation, we lack jurisdiction to review the voluntarily dismissed claims, including matters that the district court would have addressed at trial. *See Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 814 F.2d 90, 94 (2d Cir. 1987) ("[A]n appeal from a judgment entered upon a voluntary dismissal with prejudice does not bring up for review any matters that were voluntarily dismissed.").

\*       \*       \*

We have considered the plaintiffs' remaining arguments, which we conclude are without merit. For the foregoing reasons, we **DISMISS** the appeal of

the district court's order denying the plaintiffs' motion for partial summary judgment and otherwise **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court