Clark **HEINS, Plaintiff,**

v.

**John E. POTTER, Postmaster General, United States Postal Service. Defendant.**

**No. 02 CIV. 3080(CM).**

United States District Court, S.D. New York.

June 19, 2003.

Clark Heins, Monticello, NY, Pro Se.

Danna Drori, U.S. Attys. Office, New York City, for United States Postal Service, John E. Potter, PMG, Defendant.

### MEMORANDUM DECISION AND ORDER

MCMAHON, District Judge.

Plaintiff Clark Heins, proceeding *pro se*, brings discrimination claims for failure to hire, failure to accommodate, and retaliation against John E. Potter, Postmaster of the United States Postal Service, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* Defendant moves for summary judgment, arguing that plaintiff failed to exhaust his administrative claim in accordance with the applicable Equal Employment Opportunity Commission ("EEOC") regulations.

For the following reasons, defendant's motion is denied.

### FACTS

Plaintiff was an employee of the United States Postal Service ("Postal Service") at all times over the course of events that give rise to this lawsuit. In 1990, the Postal Service moved Heins from his job at the post office in Monticello, New York to one at the post office in Newburgh, New York. The reason for the move was that—in the relevant parlance of the collective bargaining agreement between the Postal Service and the American Postal Worker's Union (the "National Agreement")—Heins was "excessed." That is, he was transferred to another post office after the position that he filled at the Monticello post office was eliminated.

On March 6, 1990, Heins signed a Human Resources form stating that he had "retreat rights to vacancies in the craft and level from which [he is] currently considered excess." Pursuant to the National Agreement, retreat rights give an excessed employee the "right to bid for vacancies with [his] former installation." And a written request for retreat rights "serve[s] as a bid for all vacancies in the level from which the employee was [excessed] and for all residual vacancies in other levels for which the employee has expressed a desire to retreat." A "residual vacancy" is a vacancy that becomes available at a facility after a full-time job becomes open at that

facility and no full-time employees bid on it.

In 1992, plaintiff brought a union grievance concerning his retreat rights to the Monticello Post Office. Specifically, Heins alleged that William Tochterman, the Monticello Postmaster, had violated his retreat rights by eliminating a position at the Monticello Post Office after it became vacant. Heins's grievance resulted in a settlement agreement in which it was "resolved" that "should a residual vacancy occur," the Postal Service would invoke the National Agreement's provision concerning retreat rights. In other words, the opening of a residual vacancy at the Monticello Post Office would automatically trigger Heins's bid rights.

On April 26, 1995, Heins ran into an employee at the Monticello Post Office named Anne LaPolt. In response to an inquiry from plaintiff, LaPolt told him that there were no more part-time flexible employees ("PTFs") at the Monticello Post Office. A PTF is a permanent postal employee who is not guaranteed a 40–hour work week or a consistent schedule. *See Shiring v. Runyon,* 90 F.3d 827, 829 (3d Cir.1996).

LaPolt's comment "frightened" Heins because it raised in his mind the possibility that the Monticello Post Office had sent notices of residual vacancies to the Postal Service's Human Resources office between September and December of 1994 (when plaintiff was away from work receiving medical treatment); the Human Resources office had failed to notify him of those residual vacancies; the residual vacancies had been awarded to PTFs in Monticello; and Heinz had lost his retreat rights by failing to bid on the vacancies. [Plaintiff's Notice of Motion 15, 17].[1]

Heins's fright prompted him to ask other postal employees about what had happened to the PTFs at Monticello, as well as whether notices for any residual vacancies had been posted. [Plaintiff's Notice of Motion 16]. Heins stayed at work late on April 26 and came in early the next morning to make those inquiries. His co-workers told him that none of the PTFs had transferred, quit, retired, been excessed, gone out on disability, changed crafts, or gone on to higher level assignments. *Id.* at 25–26. Thus, Heins's inquiries eliminated most of the possible "innocent" explanations as to why there would be no more PTFs at Monticello.

Heins also wrote a letter to William Tochterman the same day he spoke with LaPolt, April 26. In the letter, Heins asked Tochterman what had happened to the PTFs and reminded him that he still had retreat rights. [Drori Decl., Ex. C, at 2].

On April 27, Heins met with Tom Michels, his union steward. He told Michels about LaPolt's comment and expressed his fear that his retreat rights may have been violated. [Plaintiff's Notice of Motion 17]. Heins also filled out his name, address, telephone number, social security number, seniority date, craft, class, level, duty hours, schedule, and work address on a "Step 1 Grievance Outline Worksheet." Heins did not actually "file" a grievance until May 4, however, after Michels told him that he would have to do so in order to receive a reply to a request for information that Michels had made (on May 1) on Heins's behalf.

Heins, by himself and through the Union, continued to investigate what happened to the PTFs at the Monticello Post Office. Michels submitted a discovery re-

---

1. It appears that Heins did not have to bid on a job at Monticello, however, because his retreat rights acted as an automatic bid for any vacancy that arose. Thus, had the Postal Service taken those actions, it would have violated his retreat rights.

quest asking whether any PTFs had been made into "full-time regulars" since April of 1994. On May 14, Heins learned from a postal employee, Tom Thalman, that Thalman's ex-wife (who Heins knew to have been a PTF at the Monticello Post Office) had become a full-time regular. On May 15, Heins's union stewards then made another discovery request, asking if any PTFs had been made into full-time regulars since January of 1993.

On May 17, based on LaPolt's comment, information concerning Thalman's ex-wife, and Heins's "fears," Michels filed a "Step II" grievance for Heins charging that the conversion of all the PTFs at Monticello into full-time regulars had violated Heins's retreat rights pursuant to Heins's previous settlement agreement with the Postal Service and the National Agreement. [Plaintiff's Notice of Motion 21]. At that time, Heins was hesitant to jump to such "hasty conclusions" because he was under the impression that Tochterman could validly promote PTFs into "unencumbered" full-time regulars.[2] An "unencumbered" full-time regular, under Heins's understanding, was a full-time employee who did not fill a "bid job" (i.e., a job that an individual with retreat rights could bid for). Heins believed that Tochterman could keep those converted PTFs in "unencumbered" status until June 30, 1997, at which point he would have had to identify any residual vacancies (presumably created by the conversion of the PTFs) for those who had retreat rights. [Plaintiff's Notice of Motion 21–22, 31].

According to Heins, defendant worked to prevent plaintiff from learning what had occurred with the PTFs. Heins states (without offering any evidentiary support) as follows: (1) Tochterman hid his conversion of PTFs into full-time regulars with bid jobs from other employees at the Monticello office, thereby cutting off the "grapevine" of gossip that normally flowed between employees at the Monticello and Newburgh post offices; (2) Tochterman did not notify Human Resources at the Newburgh office that residual vacancies existed at the Monticello Post Office; (3) Tochterman falsified paperwork that he provided to the Postal Union; and (4) Raymond Gioia, a Labor Relations specialist assigned to investigate Heins's grievance, "dragged his feet" and failed to render a Step II grievance for ninety-five days.[3] In addition, Heins offers evidence that Tochterman failed to reply to Union discovery requests, and that Tochterman told Victor Critelli, a Union representative charged with monitoring the conversion of PTFs, that he had not converted any PTFs at the Monticello office (which, it turns out, was a lie).

2. Heins based his understanding on an article published in the March 1993 edition of the *American Postal Worker*. [Plaintiff's Memorandum of Law 16].

3. These four assertions by plaintiff are either conclusory, speculative, or unsupported by any admissible evidence. Heins bases his claim that Tochterman falsified and backdated paperwork sent to the Union, for example, on the appearance of whited-out and typed over portions on documents that he does not present to the Court. [Plaintiff's Memorandum of Law 20]. (In any case, it appears that Tochterman gave those documents to plaintiff after Heins visited an EEO counselor.) And plaintiff bases his assertions concerning Gioia on hearsay. [Complaint 17]. Of course, I cannot consider these unsubstantiated claims in determining whether summary judgment is warranted. *See, e.g., Commer v. City of New York*, 1996 WL 374149, at *3 (S.D.N.Y. July 3, 1996) (finding that conclusory allegations of a cover up are insufficient to invoke the doctrine of equitable tolling); *Fridman v. City of New York*, 183 F.Supp.2d 642, 646 n. 2 (S.D.N.Y.2002) (explaining that hearsay testimony is inadmissible on a motion for summary judgment). I note them only because they provide context for understanding plaintiff's arguments and they are, ultimately, immaterial to deciding this motion.

Heins was ultimately able to substantiate his fears. On June 14, 1995, he learned through a Postal Service employee named Ralph Glass that all six of the PTFs at Monticello had been made into full-time regulars and obtained bid jobs. According to Heins, this was the information that he needed to file an EEOC complaint. As he explains in his submission to the Court: "What this information told me was that my bidding and seniority rights had been violated and that my right to compete for a job at the Monticello office had been stolen away from me. My EEOC complaint was based entirely on this factor." [Plaintiff's Notice of Motion 23].

Heins met with an EEO counselor on June 14, and filed a complaint with the EEOC on August 23, 1995. [Drori Decl., Ex. A, at 4]. In the portion of the EEOC form that asks the complainant to "[e]xplain the specific actions or situation that resulted in your allegation(s) as to how you believe you were discriminated against," plaintiff stated:

> By chance, I learned that the post office I had been excessed from in 1990 (Monticello) had knowingly ignored my retreat rights to that facility by posting 6 bids created under the 1993 MOU/part-time flexible conversion. These bids were given to 6 less senior employees while I was not allowed to bid. The Monticello P.O. violated the Retreat Rights Agreement of 1990, the PTF Converstion Agreement of 1993, and the National Agreement (Art. 12). I believe discrimination was involved due to age and disability.

*Id.* at 12.

After the Postal Service completed its investigation, Heins requested a hearing before an EEOC Administrative Judge. *Id.* at 9. During the hearing process, Heins alleged that Tochterman made the follow-ing comment at a September 12, 1997 meeting (shortly before the scheduled hearing): "I'm going to show [named witness] and those other [witnesses] at the facility who has all the power." *Id.* Heins informed the Administrative Judge of the remark, and the judge advised Heins to seek EEO counseling if he believed that Tochterman made the remark in retaliation for filing his discrimination claim. Heins contacted an EEO counselor and filed a formal complaint on June 10, 1998. *Id.*

The Administrative Judge granted the Postal Service's motion to dismiss Heins's first complaint (alleging discrimination) for failure to contact an EEO counselor within the proscribed forty-five day time period. The EEOC affirmed the dismissal on May 5, 1999. *Id.* On August 14, 1998, the Postal Service dismissed Heins's second complaint (alleging retaliation) for failure to state a claim, finding that it was a "collateral attack" on the hearing process for his discrimination claim. The EEOC affirmed the dismissal on March 2, 1999. *Id.*

Heins asked the EEOC to reconsider both decisions. The Commission denied his request and notified him of his right to sue on January 10, 2002. Heins filed suit in this Court on March 27, 2002. Plaintiff's complaint indicates that he brings this action under Title VII and the Rehabilitation Act for defendant's failure to hire him, failure to accommodate his disability (osteoarthritis), and retaliation. Specifically, he alleges that defendant (1) did not honor his retreat rights because he was disabled; (2) did not accommodate his disability and allow him to work at the Monticello Post Office; and (3) retaliated against him for initiating an EEOC complaint. [Drori Decl., Ex. A, at 15–16].[4]

---

4. The basis of plaintiff's Title VII claims is unclear, as he does not appear to allege dis-crimination on any bases the statute prohibits.

## DISCUSSION

### A. Summary Judgment Standard

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made such a showing, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

 In addition, where a party proceeds *pro se*, the Court must judge the pleadings on "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). The Court has an obligation to read a *pro se* party's supporting papers "liberally, . . . and interpret them to raise the strongest argument they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Nonetheless, proceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment. *See Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995).

### B. Plaintiff's Alleged Failure to Exhaust His Administrative Remedies

 Federal employees who seek to bring actions in federal court under Title VII and the Rehabilitation Act must first exhaust their administrative remedies. *See Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir.1996) (Title VII); *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir.2000) (Rehabilitation Act). Pursuant to the applicable EEOC regulations, an aggrieved federal employee must first seek EEO counseling within forty-five days of the allegedly discriminatory act. 29 C.F.R. § 1614.105(a)(1); *see also Judge v. Henderson*, 172 F.Supp.2d 410, 412–13 (S.D.N.Y.2001). The regulations establish the following exceptions to this rule:

> The agency or the Commission shall extend the 45–day limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). In addition, the statutory requirement for filing is analogous to a statute of limitations and is therefore considered subject to waiver, equitable tolling, and equitable estoppel.

*Briones,* 101 F.3d at 290.[5] Failure to seek EEO counseling within the requisite time period precludes a plaintiff from pursuing a discrimination claim in federal court. *See, e.g., Costanzo v. U.S. Postal Service,* 2003 WL 1701998, at \*5 (S.D.N.Y. Mar. 31, 2003).

Defendant argues that Heins's cause of action accrued on April 26, 1995—the day he knew or should have known of the allegedly discriminatory "matter or personnel action." He did not contact an EEO counselor until June 14, 1995, forty-nine days later. Plaintiff argues that his claim did not accrue until June 14, 1995, when he learned for certain that the six PTFs in Monticello had obtained bid jobs. Alternatively, plaintiff argues that equitable tolling, equitable estoppel, or the continuing violation doctrine renders his complaint to the EEO timely.[6]

The law of accrual, equitable tolling, and equitable estoppel is less than straightforward. *See Wolin v. Smith Barney, Inc.,* 83 F.3d 847, 852 (7th Cir.1996) (noting that statute of limitations law is "confusing") (Posner, J.); *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1390 (3d Cir.1994) (explaining that the law of accrual and equitable tolling "invite[s] confusion"). A primary reason is because, when discussing these doctrines, "courts do not always mean the same thing by these phrases, and phrases to which some judges ascribe different meanings are used interchangeably by other judges." *Pearl*

*v. City of Long Beach,* 296 F.3d 76, 81 (2d Cir.2002). As a result, it is necessary to provide some context before addressing the parties' arguments.

The clearest and most comprehensive discussions of these issues come from the Seventh and Third Circuits. In *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir.1990), Judge Posner distinguished between "the *accrual* of the plaintiff's claim and the *tolling* of the statute of limitations," and then between two doctrines of tolling—equitable tolling and equitable estoppel. 920 F.2d at 449. According to *Cada,* a cause of action accrues on the date when the plaintiff discovers he has been injured; this is sometimes called the "discovery rule." Equitable tolling and equitable estoppel apply only after a claim has accrued. *Id.* at 450. Equitable tolling suspends a statute of limitations where the plaintiff "despite all due diligence ... is unable to obtain vital information bearing on the existence of [a] claim ... [absent] a wrongful—or any—effort by the defendant to prevent plaintiff from suing." *Id.* at 451. Equitable estoppel bars a defendant from relying on a statute of limitations as a defense where "the defendant takes active steps to prevent plaintiff from suing in time, as by promising not to plead the statute of limitations." *Id.* at 450–51.[7] Thus, the difference between equitable tolling and equitable estoppel (under Judge Posner's typology) is the defendant's wrongful conduct.

---

5. In a similar vein, the EEOC regulations—which state that the forty-five day period does not commence until the plaintiff knew or reasonably should have known that the discriminatory act occurred—appear to codify the federal common law of accrual, under which accrual occurs when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999); *see also Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992).

6. Heins does not allege that he was unaware of the forty-five day deadline. [Plaintiff's Notice of Motion 51].

7. Judge Posner used the term "equitable estoppel" to refer to what other courts call "fraudulent concealment." *Id.* at 451 ("Equitable estoppel in the limitations setting is sometimes called fraudulent concealment.").

In *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir.1994), Judge Lewis followed *Cada* in holding that, pursuant to the discovery rule, "the accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured." *Id.* at 1385 (citing *Cada*, 920 F.2d at 450). And equitable tolling stops "the statute of limitations from running where the claim's accrual date has already passed." *Id.* at 1387. The *Oshiver* court defined equitable tolling differently than Judge Posner did, however, holding that "there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* at 1387 (citations omitted). Thus, under Judge Lewis's typology, fraudulent concealment (what Judge Posner calls "equitable estoppel") is one instance that warrants "equitable tolling." *See Pearl*, 296 F.3d at 82.

Judge Lewis distinguished between the discovery rule and equitable tolling as follows:

> "The two doctrines differ ... with respect to the type of knowledge or cognizance that triggers their respective applications. The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury. Equitable tolling, on the other hand, keys on a plaintiff's cognizance, or imputed cognizance, of the facts supporting the plaintiff's cause of action."

*Id.* at 1390; *see also Cada*, 920 F.2d at 451 ("Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him.")

The Second Circuit appears to apply the same accrual standard as *Cada* and *Oshiver*. *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980) (explaining that under federal law a cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action"). And this Court has held that equitable tolling may be invoked in essentially the same instances that the *Oshiver* court articulated. *See Torre v. Columbia University*, 1998 WL 386438, at *7 (S.D.N.Y. July 10, 1998) ("[T]he Court of Appeals has identified three general instances in which the doctrine applies: (1) an employer's actively misleading conduct is responsible for an employee's ignorance of the cause of action; (2) an employee asserted the claim in the wrong forum; and (3) extraordinary circumstances have prevented the employee from exercising his or her rights.").

■ This Circuit differs from the Third and Seventh Circuits, however, in how it distinguishes equitable tolling from equitable estoppel. In *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir.1985), the court explained: "Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir.1985); *see also Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995); *Bennett v. United States Lines, Inc.*, 64 F.3d 62, 66 (2d Cir.1995). Moreover, the Second Circuit has not always drawn clear distinctions between ac-

crual and equitable tolling based on fraudulent concealment. *See Pearl*, 296 F.3d at 82–83.

Stripping away the confusing use of different terminology among different courts (both among and within circuits), I find that two important distinctions exist. First, there is a difference between a plaintiff's knowledge of the *injury* that forms the basis of his cause of action and his knowledge of *other* facts that support his cause of action. Second, the law distinguishes instances when a defendant takes some sort of wrongful, affirmative act to prevent a plaintiff from learning material information, and instances when either a defendant's acts are not wrongful or the defendant has taken no affirmative act at all.

■ The law of accrual is concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action. The Supreme Court has been explicit about this, explaining: "[I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). A plaintiff's injury is, of course, relevant to his cause of action. *See Oshiver*, 38 F.3d at 1390 n. 8 ("Of course, cognizance of the facts supporting the plaintiff's cause of action presumes cognizance of actual injury."). Indeed, a plaintiff's injury is often an element of his cause of action. In a discriminatory discharge case, for example, a plaintiff's firing is the injury that he suffered as well as the adverse employment action that forms the basis of his cause of action. This is probably why courts often conflate the discovery rule and tolling based on fraudulent concealment. *See Pearl*, 296 F.3d at 80 ("[T]he 'discovery rule' is related to and some-

times confused with the concept of fraudulent concealment of a cause of action."); *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C.Cir.1998) ("[T]he 'discovery rule' and 'equitable tolling' are often treated as the same doctrine.").

■ Thus, where a defendant's wrongful, affirmative conduct prevents a plaintiff from learning that he has been injured, the plaintiff's cause of action has not accrued. *See Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir.1998); *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.1982) (holding that the discovery rule applies where the government conceals the acts giving rise to plaintiff's claim). However, when a plaintiff knows or should have known of his injury—i.e., his claim has accrued—but the defendant's wrongful, affirmative acts prevent him from learning about other facts that might support a cause of action, then tolling may apply. In other words, tolling only applies once a claim has accrued, regardless of whether defendant's misconduct prevented the claim from accruing. And, at least in the Second Circuit, equitable estoppel does not apply unless a plaintiff knows of his cause of action and is unable to assert his rights. With this in mind, I turn to the facts of this case.

Significantly, everything that plaintiff learned between April 26 and June 14 related to the fact of his injury. Heins admitted as much several times during his deposition. He answered "no," for example, when asked: "From the moment that your conversation with Anne LaPolt ended, between that time and the time of June 15, 1995, can you point to any piece of information that you received that led you to believe that you had been the victim of disability discrimination?" [Heins Deposition 55–56]. And in his motion papers, Heins explains: "[Defendant] is right about one thing: From April 26, 1995,

until June 14, 1995, I did not obtain any information by which I could conceivably file a discrimination complaint. Where [defendant] is wrong is trying to imply that I did receive enough information on April 26, 1995, to file a complaint." [Plaintiff's Notice of Motion 47].

Thus, equitable tolling does not apply. That doctrine only tolls a statute of limitations when a plaintiff is unaware of facts supporting a cause of action, *other than facts regarding his injury.* And equitable estoppel necessarily does not apply, because that doctrine tolls a statute of limitations only when a plaintiff is aware of his cause of action. Here, Heins declares he was ignorant of his cause of action for discrimination. *See id.* at 46 ("Even at that date [June 14, 1995], I still had no evidence against Mr. Tochterman suggesting discrimination, but my suspicions had been aroused by his failure to answer the Union's discovery request and by Labor Relations failure to conduct an investigation."). The dispositive issue is when accrual occurred.

### 1. *A Jury Must Determine When Plaintiff's Claim Accrued*

As explained above, accrual occurs when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). The relevant issue here is how much did plaintiff have to know in order to "know" that he had suffered this injury. Plaintiff argues that accrual occurred on June 14 because

that is the day when he had concrete knowledge that PTFs had been converted into full-time regulars and allowed to bid on jobs to which he had retreat rights. Defendant argues that plaintiff had sufficient "knowledge" when he learned from LaPolt's comment about a *possible* violation of his retreat rights.

"A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim." *Kronisch,* 150 F.3d at 121.[8] Rather, accrual occurs when the plaintiff has discovered "the critical facts of both his injury and its cause." *Id.*[9]

> Discovery of the "critical facts" of injury and causation is not an exacting requirement, but requires only "knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it. . . . [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice."

*Id.* (quoting *Guccione v. United States,* 670 F.Supp. 527, 536 (S.D.N.Y.1987)). In addition, "[a] plaintiff need not have compelling proof of the validity of his claim in order for his claim to accrue—indeed, in cases where plaintiff's claim is ultimately misconceived, such proof will not exist—but must simply have formed a firm belief in his claim based on his awareness of the

---

**8.** A "mere hunch, hint, suspicion, or rumor" does give rise to a "duty to inquire into the possible existence of a claim in the exercise of due diligence." *Kronisch,* 150 F.3d at 121. Defendant does not suggest, however, that Heins did not exercise due diligence.

**9.** *Kronisch* involved a claim under the Federal Tort Claims Act. In *Barrett v. United States,* however, the Second Circuit held: "The dili-

gence-discovery rule of accrual is not often applied outside the medical malpractice area, but may be appropriate in non-malpractice cases, where plaintiffs face comparable problems in discerning the fact and cause of their injuries. Thus, any plaintiff who is blamelessly ignorant of the existence or cause of his injury should be accorded the benefits of the more liberal accrual standard." 689 F.2d 324, 327 (2d Cir.1982) (internal citations omitted).

basic facts of injury and causation." *Id.* at 123 n. 6.

The undisputed facts establish that on April 26 Heins certainly had at least a "hint" or "suspicion" that somehow the Postal Service had violated his retreat rights. Plaintiff asserts, however, that at that point he thought the Human Resources office had erred by posting vacancies at the Monticello Post Office rather than notifying him of those vacancies, a courtesy his retreat rights entitled him to. Heins explains that the following entered his head immediately after speaking with LaPolt: "God damn it! The Human Resources office failed to notify me of those residual vacancies and, as a result, I've lost my retreat rights for failure to bid!" *Id.* at 15. He also thought to himself, "Well, if this is true, it should form the subject of a pretty good grievance." *Id.* Assuming Heins's assertion to be true (which I must on this motion for summary judgment), then plaintiff simply believed that the Postal Service had violated his retreat rights through a negligent administrative error. That is not sufficient knowledge of plaintiff's injury and its cause for his claim to have accrued. Of course, a jury could infer from the evidence—for example, the fact that Heins had accused Tochterman of violating his retreat rights in 1992, or that he contacted a union representative on April 27—that Heins did, in fact, have sufficient knowledge. But the issue— whether Heins knew of the "critical facts" of his injury prior to May 2—must be decided at trial.

### 2. *The Continuing Violation Doctrine Does Not Apply*

■ Plaintiff also argues that the continuing violation doctrine renders his claim timely. Under the continuing violation doctrine, if a plaintiff has experienced a " 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be de-layed until the last discriminatory act in furtherance of it.' " *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir.1992) (quoting *Miller,* 755 F.2d at 25), *quoted in Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001). The Second Circuit has not addressed what, if anything, of the continuing violation doctrine survives the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *See Bailey v. Colgate–Palmolive Co.,* 2003 WL 21108325, at *8 (S.D.N.Y. May 14, 2003). Even were the continuing violation doctrine to survive *Morgan* fully intact, however, plaintiff's argument would fail.

■ A continuing violation occurs in one of two situations. First, the doctrine applies to situations where there are specific discriminatory policies or mechanisms, such as discriminatory seniority lists. *See Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). Second, the doctrine also applies "where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Fitzgerald v. Henderson,* 251 F.3d 345, 359, 362 (2d Cir.2001). "[A]cts so 'isolated in time . . . from each other . . . [or] from the timely allegations[ ] as to break the asserted continuum of discrimination' will not suffice." *Id.* at 359 (quoting *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir.1998)).

Plaintiff's continuing violation doctrine argument fails because he does not identify a "discriminatory act" that occurred within the forty-five day period before June 14, 1995. Tochterman's statement to Critelli does not constitute a discriminatory act. And plaintiff's vague, conclusory statement that "the discriminatory policy of failing to hire me, of failure to notify me

of residual vacancies, of failure to accommodate me, of failure to follow medical procedures, of failure to abide by a seniority system, of failure to allow a disabled person to compete for a job against non-disabled persons, has continued, not only in the 'alleged' limitations period, but beyond that period—right up to this very day," does not raise an issue of fact in this motion for summary judgment. [Plaintiff's Memorandum of Law 26].

## CONCLUSION

Defendant's motion for summary judgment is denied. This is the decision and order of the Court.