10-4651-pr
Johnson v. Killian

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2011

(Submitted: April 26, 2012                                    Decided: May 16, 2012 )

Docket No. 10-4651-pr

NEIL JOHNSON,

      *Plaintiff-Appellant,*

      -v.-

WARDEN KILLIAN, RABBI LASKIN, Chaplain, D. WYNKOOP,

      *Defendants-Appellees.*

Before: CALABRESI, CABRANES, and CHIN, *Circuit Judges.*

————————

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) entered August 26, 2010, which dismissed plaintiff-appellant's claims that defendants-appellees had violated his rights under the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, based on a finding that plaintiff-appellant had failed to exhaust his administrative remedies concerning his congregational prayer policy claim.  Because we find that plaintiff-appellant did indeed exhaust his administrative remedies, we vacate the judgment of the District Court and remand for further proceedings.

————————

Neil Johnson, Lisbon, OH, *Plaintiff-Appellant*, *pro se.*

Li Yu and Benjamin H. Torrance, Assistant United States Attorneys, Southern District of New York, New York, NY, *for Defendants-Appellees.*

————————

P ER C URIAM:

The question before us is whether the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) properly granted summary judgment to defendants-appellees Warden Killian, Rabbi Laskin, and Case Manager Wynkoop[1] (jointly, "defendants") based on its finding that plaintiff-appellant Neil Johnson failed to exhaust his administrative remedies through the Bureau of Prisons ("BOP") as required by the Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e.

Johnson, *pro se* and incarcerated, appeals the final judgment of the District Court entered August 26, 2010, granting summary judgment in favor of defendants on Johnson's claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violation of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1.  Because we find that Johnson did indeed exhaust his administrative remedies, we vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.

## *STANDARD OF REVIEW*

We review *de novo* an order of a district court granting or denying summary judgment.  *See, e.g.*, *Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 137 (2d Cir. 2010).  Summary judgment is warranted only upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether there are genuine issues of material fact, "we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

---

[1] Although Wynkoop was not named in the initial complaint, he was added as a defendant in the amended complaint of January 31, 2008.

2

However, "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

Johnson, a follower of Islam, was incarcerated at the Federal Correctional Institution in Otisville, New York ("FCI Otisville") from at least 2005 to August 2007. During that period, FCI Otisville had two wardens—Warden Menifee until early 2007 and Warden Killian starting in April 2007.

Beginning in 2005, there was a policy at FCI Otisville that restricted Muslim inmates' ability to perform regular congregational prayers. Specifically, Johnson's religious beliefs require participation in congregational prayer five times a day. Under the FCI Otisville policy, however, the prison chapel was available only once a day and no other space within the facility was made available to Johnson and others of his faith.[2]

In February 2005, Johnson filed and exhausted an administrative grievance concerning limitations on congregational prayer at FCI Otisville. Menifee denied Johnson's administrative grievance, and Johnson exhausted his appeals.[3] Soon after Johnson exhausted the administrative remedy process as to his 2005 grievance, FCI Otisville substantially ceased enforcing the relevant policy.

In April 2007, Killian replaced Menifee as warden of FCI Otisville. After Killian's arrival, the policy restricting congregational prayer was reimplemented and consistently enforced, limiting

---

[2] Johnson alleges that he was unable to conduct individual prayers in his own cell in proper adherence to his religious tenets due to, *inter alia,* the restrictive size of the cells and the proximity of images in the form of family pictures, calendars, and television programs.

[3] The final appeal on his grievance was rejected by the BOP in June 2005.

Muslim prisoners to performing congregational prayer only one time a day, five days a week, in the chapel. According to the amended complaint, on April 12, 2007, several Muslim inmates, including Johnson, were engaged in congregational prayer in the housing unit when a corrections officer informed them that they could not perform prayer at that location. A few minutes later, Johnson was called to Wynkoop's office, at which time she informed him that if she heard that he was participating in such a congregational prayer again she would write him an incident report. The encounter allegedly prompted Johnson to file the instant suit. Johnson did not file an additional administrative grievance to challenge Killian's renewed enforcement of FCI Otisville's pre-existing policy.

On July 24, 2007, Johnson filed a complaint in the District Court, alleging that his rights under the RFRA had been violated. He filed an amended complaint on January 31, 2008, naming eight additional FCI Otisville inmates as plaintiffs. The amended complaint alleged that: "Sometime in 2005, . . . the administration at Otisville began enforcing an institutional policy which denied the Muslims the right to perform congregational prayers in the housing unit. . . . [Defendants] placed a substantial burden on the practicing of a tenet of the Muslims at Otisville, by not allowing them to pray in congregation in the housing units, while failing to provide a location where congregation[al] prayers can be performed when the Chapel Area is not available . . . ." The amended complaint asserted violations of the RFRA and the First Amendment and sought, *inter alia*, punitive damages in the amount of $250 per day, calculated from the time Killian became warden "until the religious oppression is ended."

On August 29, 2008, the defendants moved for partial summary judgment, seeking dismissal of all claims except for Johnson's First Amendment retaliation claim against Wynkoop. On April 21, 2009, the District Court (Laura Taylor Swain, *Judge*) granted the defendants' motion for partial

4

summary judgment, finding that Johnson had not exhausted the administrative remedies process as required by the PLRA, noting that "the gravamen of Plaintiffs' complaint concerns the prayer policies as administered under Warden Killian in 2007" and that the Killian administration had not been given a fair opportunity to consider the grievance. *Johnson v. Killian*, No. 07 Civ. 6641, 2009 WL 1066248, at *4 (S.D.N.Y. Apr. 21, 2009). "[T]he problem," the District Court added, "is not that Johnson . . . failed to identify Killian in [his] administrative grievance, but that the administrative grievance filed in 2005 complained of a wholly different set of circumstances—the prayer restrictions in effect in 2005—than the circumstances complained of in the instant lawsuit—the prayer restrictions allegedly imposed by Warden Killian in 2007." *Id.*

Johnson sought reconsideration of the District Court's order granting partial summary judgment, which the District Court (Naomi Reice Buchwald, *Judge*)[4] denied in an order dated June 23, 2009. *See Johnson v. Killian*, No. 07 Civ. 6641, 2009 WL 1787724 (S.D.N.Y. June 23, 2009).

On April 20, 2010, following discovery, Wynkoop moved for summary judgment on Johnson's remaining retaliation claim. By order dated August 23, 2010, Judge Buchwald granted that motion, dismissing the amended complaint in its entirety. *See Johnson v. Killian*, No. 07 Civ. 6641, 2010 WL 3468124 (S.D.N.Y. Aug. 23, 2010).

On appeal, Johnson argues that the District Court erred in granting summary judgment in favor of defendants because he had indeed exhausted the administrative remedy process when he filed and fully appealed the administrative grievance in 2005 concerning FCI Otisville's prayer policies under Menifee.

### DISCUSSION

By order dated April 28, 2011, we dismissed those aspects of Johnson's appeal not related to whether he had failed to exhaust his administrative remedies. Following our *de novo* review, we

---

[4] On June 5, 2009, Johnson's case was reassigned from Judge Swain to Judge Buchwald.

5

vacate the remaining portion of the judgment of the District Court, which held that Johnson failed to exhaust his administrative remedies concerning his congregational prayer policy claim.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation marks omitted). We have described the grievance process available to federal prisoners as follows:

> BOP's procedural rules . . . create[] a four-step administrative grievance system for prisoner complaints. The first step require[s] inmates to "present an issue of concern informally" to the prison staff so that they could attempt to resolve it. If the issue remain[s] unresolved, the inmate c[an] submit "a formal written Administrative Remedy Request" to the institution staff member designated to receive such requests. The inmate c[an] appeal any adverse decision made at that stage to the Regional Director, and then to the BOP's General Counsel.

*Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (internal citations omitted).

We have recognized that "[t]he purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits[,] and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (internal alterations and quotations marks omitted).

6

In this case, Johnson's 2005 grievance provided the prison administration with notice of, and an opportunity to resolve, the same problem that would continue intermittently through 2007 Although the District Court and the defendants framed the action as concerning "a wholly different set of circumstances" than those raised in the 2005 grievances, *Johnson*, 2009 WL 1066248, at *4, the issue that Johnson would have raised in 2007—the inadequacy of the spaces and times allotted for congregational prayer—was *identical* to the issue he exhausted in 2005.[5] Accordingly, we now hold that Johnson's 2005 grievance was sufficient to exhaust his administrative remedies with respect to the continuing limitations on congregational prayer at FCI Otisville.

We do not hold, however, that generalized complaints regarding the conditions of confinement will suffice to shortcut the administrative remedy process. Indeed, such a holding would appear to eviscerate the PLRA's exhaustion requirement, which "applies to all inmate suits about prison life." *Porter*, 534 U.S. at 532. Thus, our holding is necessarily limited to cases in which a prior grievance identifies a specific and continuing complaint that ultimately becomes the basis for a lawsuit.

We express no opinion as to the merits of Johnson's claim.

### *CONCLUSION*

For the reasons stated above, the judgment of the District Court is **VACATED** and the cause is **REMANDED** for further proceedings consistent with this opinion.

---

[5] Other circuits have held that further grievances were not necessary in such instances. *See Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) ("Nothing in the [state] grievance procedures require inmates to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance."); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (holding that a prisoner was "not required to begin the grievance process anew when the very risk to his safety that he identified during the grievance process came to pass"); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("As a practical matter, [plaintiff] could not have been expected to file a new grievance . . . each time he was assaulted . . . . [Plaintiff's] grievances were sufficient to exhaust claims that arose from the same continuing failure to protect him from sexual assault.").