20-3663-cv
Koral v. Alsou Saunders, Est. of Gregg Saunders

United States Court of Appeals
for the Second Circuit

AUGUST TERM 2021
No. 20-3663

LISA NECKRITZ KORAL,
Plaintiff-Appellant,

v.

ALSOU SAUNDERS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF
GREGG SAUNDERS, ESTATE OF GREGG SAUNDERS,
Defendants-Appellees.

ARGUED: OCTOBER 6, 2021
DECIDED: MAY 31, 2022

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF NEW YORK

Before:      JACOBS, MENASHI, Circuit Judges, KAPLAN, District Judge.*

Thirteen years after her divorce from Gregg Saunders ("Gregg"), plaintiff

Lisa Neckritz Koral ("Lisa") brought suit against the Estate of Gregg Saunders,

---

* Judge Lewis A. Kaplan of the United States District Court for the Southern
District of New York, sitting by designation.

and against Gregg's widow (Alsou Saunders), individually and as administratrix of the Estate, claiming that Gregg misrepresented the value of his real estate investments during divorce proceedings. As to one commercial property investment, it is alleged that Gregg sold half of his share for hundreds of thousands of dollars, failed to disclose the sale or the proceeds to Lisa or to their neutral appraiser, and then concealed the fact of the sale — thereby depriving Lisa of her share of their marital assets. The United States District Court for the Eastern District of New York (Feuerstein, J.) granted summary judgment in favor of the defendants on the ground that the discovery rule did not apply to Lisa's claims and dismissed Lisa's claims as time-barred; the district court did not consider whether Lisa's claims should be tolled. We affirm in part, and in part vacate and remand for consideration of the doctrine of equitable estoppel as to one of the contested investments.

Judge Kaplan dissents in a separate opinion.

_____

MATTHEW J. PRESS, Press Koral LLP, New York, NY, <u>for Plaintiff-Appellant</u>.

RUSSELL L. PENZER, Lazer, Aptheker, Rosella & Yedid,

2

P.C., Melville, NY, for Defendants-Appellees.

DENNIS JACOBS, Circuit Judge:

This diversity suit arises from the 2004 divorce of Lisa Neckritz Koral ("Lisa") and Gregg Saunders ("Gregg"). In the divorce proceedings, they traded statements of net worth (among other disclosures), conducted an appraisal on several commercial properties fractionally owned by Gregg, expressed satisfaction that their assets were fully disclosed, and disclaimed further inquiry. They signed a stipulation of settlement in July 2004; their divorce was final within a month.

Gregg died in a car accident nearly a decade later, and Lisa was deposed in connection with his wrongful death proceeding. During her 2016 deposition, Lisa was advised that Gregg's investments in commercial property may have been worth millions of dollars. She then became suspicious that Gregg had misrepresented the value of his real estate holdings, that the appraisal was inaccurate, and that the stipulation of divorce settlement was induced by fraud. A year after the deposition, Lisa commenced this fraud action against the Estate of Gregg Saunders and against Alsou Saunders, Gregg's widow, individually

3

and in her capacity as administratrix. This appeal is taken from the judgment of the United States District Court for the Eastern District of New York (Feuerstein, J.), which dismissed the complaint on summary judgment, on the ground that the claims are barred by the statute of limitations.

Notwithstanding that this suit was filed thirteen years after the divorce, Lisa contends that the suit is timely by virtue of the discovery rule or equitable estoppel.[1] As the district court held, the discovery rule does not apply to Lisa's claims. However, the district court did not consider whether Gregg's alleged fraudulent concealment warrants tolling the statute of limitations. The evidence suggests that Gregg may have committed fraud in connection with the sale of one of his real estate holdings, and then concealed that fraud. Accordingly, we affirm in part, and in part vacate and remand so that the district court can determine whether equitable estoppel tolls Lisa's claims arising from Gregg's

---

[1] Lisa argues that her claims should be tolled pursuant to the doctrines of fraudulent concealment or equitable tolling. Opening Br. at 23. However, for the reasons set forth in Point V, we construe Lisa's argument as a request to apply equitable estoppel. See Pearl v. City of Long Beach, 296 F.3d 76, 81-83 (2d Cir. 2002) (explaining the varying uses of terminology regarding tolling).

sale of that investment.

## I

Lisa and Gregg married in 1997 and filed for divorce in 2002.  During their marriage, Gregg worked in the commercial real estate business as a broker and investor.  The value of his commercial real estate investments was an issue during the divorce proceedings, including (as relevant in this appeal) the value of a property in Danbury (the "Danbury Property"), a property in Southbury (the "Southbury Property"), and a property in Long Island City (the "LIC Property") (together, the "Properties").

At the outset of proceedings, the parties exchanged net worth statements. Gregg's "Statement," made under penalty of perjury, gave the combined value of his real estate holdings, bank accounts, and home equity, among other assets, at $855,000 as of August 6, 2002.  An addendum described the Properties and represented that they contributed nothing to Gregg's net worth.  An affirmation from Gregg's lawyer, dated June 2002, described the Properties based on Gregg's representations (the "Affirmation").

5

The parties jointly retained an accountant from PricewaterhouseCoopers to appraise the Properties (as well as two other properties not at issue on appeal). Following his review, Richard Marchitelli ("Marchitelli") issued a report (the "Report") concluding that the LIC Property and the Danbury Property were worth nothing, and that the Southbury Property was worth $755,000.

The Report came with important caveats. First, the Properties were valued as of May 1, 2002, though the Report was issued nearly a year later on March 25, 2003. Second, Marchitelli disclosed that he lacked complete information. In particular, he lacked access to: the books and records of the managing partners of the Properties; the invoices or written documentation for most expenditures and/or equity contributions by the managing partner; full copies of the leases; and overall written documentation of revenue sources and distributions. Instead, Marchitelli relied on verbal and written representations by Gregg, his partners, and his partners' representatives, and (presumably) market conditions and professional expertise. Lisa's counsel questioned the accuracy of Marchitelli's preliminary reports, and complained that Marchitelli was not "given complete and full information." Joint App'x 248. Nevertheless, though

6

Lisa considered retaining a second real estate expert, she ultimately instructed her attorney to take no further steps in connection with the appraisal of Gregg's property.

Although Gregg provided Lisa with the Statement and participated in the appraisal process, Lisa remained skeptical about the accuracy of Gregg's disclosures. Accordingly, on August 23, 2003, she deposed him regarding his assets. When asked about his ownership interest in the LIC Property, Gregg testified:

> I don't know because I am in an entity that is in partnership with another entity, so it may be 18.9 percentage or – I think it might say like 18.9 percent, but that is 18.9 percent of 45 percent of 100 percent. I don't know specifically.

Joint App'x 616.

On July 22, 2004, Lisa and Gregg entered a stipulation of settlement (the "Stipulation"), which specified the division of assets, and provided that Gregg would take possession of each of the Properties. The Stipulation also set forth several representations: the parties "ha[d] made full disclosure of all assets or income in a net worth statement furnished to the other party through counsel";

7

they had conducted independent inquiries into the financial circumstances of one another through discovery and with the aid of a neutral appraiser; and they had "conducted discovery to their satisfaction." Joint App'x 74. The parties waived their rights to additional inquiry and represented that their attorneys were instructed to take no further steps in connection with the investigation or appraisal of the other's property. Id. The parties acknowledged that the "financial status of the parties has been fully explained to both parties by counsel," and that the Stipulation "is not the result of any fraud, duress, coercion, pressure or undue influence." Id. at 76. The Stipulation was incorporated into the Judgment of Divorce in August 2004.

Gregg died in a car accident in 2012, and Lisa was deposed in the wrongful death action in 2016. According to Lisa, the Estate was then "forced to reveal details about [Gregg's] finances and his real estate holdings," and she learned from the insurance company that the real estate in which Gregg had invested was worth "tens of millions of dollars" at the time of the divorce. See id. at 11 ¶¶ 9-10; 18 ¶¶ 47-48; see also id. at 228 (Lisa's testimony explaining that a woman from the insurance company approached her and "put[] a rough number value

8

on the estate"). From the time of her 2016 deposition, Lisa suspected that Gregg had lied about the value of the Properties during divorce proceedings and had induced Lisa to sign the Stipulation and thereby suffer the loss of her share of the true value of the Properties.

**II**

The complaint, filed on December 1, 2017, alleges fraud, fraud in the inducement, breach of fiduciary duty, and constructive trust. The amended complaint, filed in February 2018, challenged the value of the Properties as represented in the Statement, the Affirmation, the Report, and the Stipulation.

A year later, the district court denied a motion to dismiss, holding, <u>inter alia</u>, that (i) releases and waivers in matrimonial settlements can be set aside on the basis of fraudulent inducement or concealment; (ii) there is a fiduciary duty between spouses during divorce negotiations; (iii) Gregg made a "separate" representation in the Stipulation that he fully disclosed his assets and income in the Statement; (iv) Lisa did not waive her right to sue for fraud in the Stipulation; and (v) the Stipulation could be set aside based on proof that the Report was

9

"tainted" by false information provided by Gregg. The case proceeded to discovery.

Though Lisa initiated this action based on suspicion, she used the discovery process to build her case that Gregg misrepresented and concealed information related to the value of the Properties. Some examples follow.

First, Lisa learned during discovery that Gregg sold half his interest in the LIC Property after the Statement and the Report were issued, but before the divorce was final. Gregg had owned an 18.19% interest in a partnership that owned an interest in the LIC Property. On May 16, 2003, Gregg sold 9.095% of the partnership (half his interest) to a friend, Geoffrey Gordon, for $650,000. According to a declaration subscribed by Gordon, he understood that the purchase value did not necessarily reflect fair market value, but he wanted to invest in real estate, and he knew that Gregg needed money to finance his divorce. The sale proceeds of $650,000 were paid into the escrow account of Gregg's corporate attorney.

Second, Lisa learned that, when the entity that owned the LIC Property refinanced in June 2003 (before the divorce), the restated mortgage identified an

10

unpaid balance of just under $20 million, which was less than the outstanding debt stated in the Report. The defendants dispute Lisa's characterization, and maintain that the $20 million in outstanding debt represented unpaid principal, but did not account for the amount of total indebtedness, including, for example, unpaid fees and interest that existed as of May 2002.

Third, Lisa claims that certain documents, which reflect the leasing of the Properties (and which were produced in discovery in this action), were inconsistent with the leases and rent roll information that Gregg provided to Marchitelli during the appraisal process. For example, according to Lisa, the documents revealed that the LIC Property renewed a lease with one of its tenants, National Wholesale Liquors, which provided for a higher base rent and a longer lease term than the initial lease. Lisa argues that Gregg withheld the renewed lease information from Marchitelli.

In a motion for partial summary judgment, Lisa argued that these omissions are material because, if Gregg had disclosed the sale of the LIC Property, as well as the refinanced mortgage, and updated lease and rent terms (among other relevant information), the Report might have concluded that the

11

Properties were worth more, and Lisa might not have ceded her interests in the Properties in the Stipulation. On these grounds, Lisa argues that the Stipulation was induced by fraud and should be rescinded.

The defendants cross-moved for summary judgment on the ground that Lisa's claims are time-barred, and that in any event no reasonable jury could conclude that the Stipulation was induced by fraud or that Gregg breached his fiduciary duty to Lisa. Though the Stipulation was signed in 2004, Lisa maintains that her claims are timely pursuant to the discovery rule or equitable estoppel.

In September 2020, the district court adopted a report & recommendation, which concluded that the discovery rule was inapplicable and that the claims were time-barred. The district court did not consider possible application of equitable estoppel. But the court further ruled that, even if the claims were timely, Lisa identified insufficient evidence to create a triable issue of fact that Gregg misrepresented assets or induced justifiable reliance at the time of the divorce proceeding. Based on the foregoing, the district court granted summary judgment in the defendants' favor and dismissed the case.

## III

We review the district court's rulings on summary judgment <u>de novo</u>. <u>Tiffany & Co. v. Costco Wholesale Corp.</u>, 971 F.3d 74, 83 (2d Cir. 2020). "Summary judgment is warranted only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>See</u> <u>Johnson v. Killian</u>, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (quoting Fed. R. Civ. P. 56(a)). We must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 137 (2d Cir. 2003) (citation omitted). "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" <u>Johnson</u>, 680 F.3d at 236 (alteration in original) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

In New York, an action for fraud must be commenced within six years of the fraud, or within two years from the time that plaintiff discovered the fraud or

13

reasonably could have discovered it. <u>Sargiss v. Magarelli</u>, 12 N.Y.3d 527, 532 (2009) (citing N.Y. C.P.L.R. § 213(8); § 203(g)). Likewise, a fraud-based breach of fiduciary duty claim "must be commenced within 6 years from the date of the fraudulent act or 2 years from the date the party discovered the fraud or could, with due diligence, have discovered it." <u>Murphy v. Morlitz</u>, 751 F. App'x 28, 30 (2d Cir. 2018) (summary order) (citing <u>Kaufman v. Cohen</u>, 760 N.Y.S.2d 157, 167 (1st Dep't 2003)). The statute of limitations for constructive trust claims is six years, beginning upon occurrence of the wrongful act, regardless of when it is discovered. <u>Kaufman</u>, 760 N.Y.S.2d at 171.

The events giving rise to Lisa's claims – the provision of the Statement, the appraisal process, and the signing of the Stipulation – occurred between 2002 and 2004. Lisa invokes the discovery rule and equitable estoppel to argue that this suit, initiated more than thirteen years later, is nevertheless timely.

**IV**

Under the discovery rule, accrual occurs within two years of when the plaintiff "discovered the fraud, or could with reasonable diligence have

14

discovered it."  N.Y. C.P.L.R. §213(8); see also N.Y. C.P.L.R. § 203(g)(1).  "The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which [the fraud] could be reasonably inferred."  Sargiss, 12 N.Y.3d at 532 (internal quotation marks and citation omitted; alterations in original).  "[I]t is knowledge of facts not legal theories that commences the running of the two-year limitations period."  CSAM Cap., Inc. v. Lauder, 885 N.Y.S.2d 473, 480 (1st Dep't 2009) (citation omitted).

The district court ruled that Lisa could not invoke the discovery rule because she failed to identify any "actual specific misrepresentation" prior to initiating suit.  Koral v. Saunders, No. 17 Civ. 7011, 2020 WL 6385323, at *8 (E.D.N.Y. May 25, 2020), report and recommendation adopted, No. 17 Civ. 7011, 2020 WL 5810119 (E.D.N.Y. Sept. 30, 2020).  While Lisa concedes that she has not specified a misrepresentation, she argues that this action is timely nevertheless because she initiated it within two years of developing suspicions during the wrongful death proceeding, and well within two years of identifying evidence of fraud during discovery in this action.

15

Lisa relies on cases in which the plaintiff discovered facts supporting fraud claims *before* initiating suit. See, e.g., Sargiss, 12 N.Y.3d at 532 (holding that claim was timely when brought after daughter discovered financial documents in late father's home); Abele Tractor & Equip. Co. v. Balfour, 20 N.Y.S.3d 697, 701 (3d Dep't 2015) (reversing summary judgment on limitations grounds, finding issue of fact regarding timeliness of suit brought after tax records were discovered during unrelated litigation). Lisa, however, did not uncover facts supporting her fraud claims during the wrongful death proceeding, or at any other time prior to initiating suit. Instead, she developed suspicions based on representations during the wrongful death proceeding, filed her complaint, *and then* used discovery in this case to validate her suspicions.

The discovery rule is not a tool to aid speculation or to validate a hunch. As Lisa has not shown that she had any "knowledge of facts" supporting the fraud within two years *prior* to initiating suit, we agree with the district court that she cannot invoke the discovery rule to save her claims. CSAM, 885 N.Y.S.2d at 480.

16

**V**

In the alternative, Lisa argues that tolling is warranted by Gregg's concealment of the fraud.

New York courts and the courts of this Circuit variously use the terms "fraudulent concealment," "equitable tolling," and "equitable estoppel," not always with clear delineation. See Pearl v. City of Long Beach, 296 F.3d 76, 81-83 (2d Cir. 2002) (explaining the varying uses of terminology). And Lisa casts her argument largely in terms of a distinction between active and passive concealment. The terminology is a distraction. Federal district courts in this Circuit sometimes differentiate between active and passive concealment when considering a claim of fraudulent concealment, see, e.g., Bennett Silvershein Assocs. v. Furman, No. 91 Civ. 3118, 1997 WL 531310, at *5 (S.D.N.Y. Aug. 28, 1997); but the New York cases do not invoke such a distinction. Because Lisa alleged state law claims, we look to New York state cases.[2]

---

[2] New York state courts do not distinguish between the doctrines of equitable tolling and equitable estoppel. See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

17

In New York, "equitable estoppel" is applicable "[1] 'where the defendant conceals from the plaintiff the fact that he has a cause of action [and] [2] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.'" Pearl, 296 F.3d at 82 (citing Joseph M. McLaughlin, Practice Commentaries, N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990)); see also Zumpano v. Quinn, 6 N.Y.3d 666, 674 (2006) (citing Simcuski v. Saeli, 44 N.Y.2d 442, 449 (1978)). Lisa's claim is of the first variety. The doctrine requires proof that "the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action." Kaufman, 760 N.Y.S.2d at 167.

But it is not enough to have been misled or defrauded. The plaintiff must demonstrate her diligence in seeking the facts. Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 569 (3d Dep't 2005); see also Zola v. Gordon, 685 F. Supp. 354, 365 (S.D.N.Y.), on reargument, 701 F. Supp. 66 (S.D.N.Y. 1988) ("Stated another way, in cases involving fiduciary relationships, tolling ceases to work to a plaintiff's benefit when the plaintiff possesses sufficient facts that he must

18

engage in some inquiry, and he fails to live up to this obligation.").  And "equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action."  Kaufman, 760 N.Y.S.2d at 167.

Lisa asserts that Gregg committed fraud when he misrepresented the Properties' values in the Statement (a misrepresentation that Gregg's attorney confirmed in the Affirmation and that Gregg reaffirmed in the Stipulation).  Lisa alleges that Gregg then concealed the purported fraud during the six-year limitations period when he (1) submitted "false rental, expense and debt information to the [a]ppraiser," so that the Report falsely corroborated Gregg's misrepresentations; and (2) hid the sale of the LIC Property.  Opening Br. 29-30; see also Reply Br. 10-11.

Below we consider whether equitable estoppel tolls the limitations period in connection with the representation that the Properties were valueless (Point VI) or with respect to the sale of the LIC Property (Point VII).

19

## VI

Lisa characterizes the fraud as Gregg's misrepresentation of the value of the Properties in the Statement, and characterizes the misrepresentations in the Stipulation, as well as the provision of false information to Marchitelli, as separate acts of concealment. We reject that characterization. All of these acts constitute the underlying fraud, which was the representation that the Properties were valueless. There are several intractable problems with applying equitable estoppel to that claim.

First, and most simply, concealment of fraud must entail more than the fraud itself, unconfessed. Kaufman, 760 N.Y.S.2d at 167. Whatever the nature of fiduciary duty between a husband and a wife during divorce proceedings, Cohen v. Cohen, 993 F. Supp. 2d 414, 427–28 (S.D.N.Y. 2014), this does not relieve an ex-spouse from the statute of limitations and does not allow tolling of the limitations period absent an act of concealment that is separate from the fraud itself, Zumpano, 6 N.Y.3d at 674. Gregg's alleged fraud was the representation that the Properties were valueless, a representation made in the Statement, the Affirmation, and the Stipulation, and largely reaffirmed by the Report. Lisa does

20

not identify a subsequent or separate act of concealment that precluded her from discovering that fraud.

Second, given Lisa's access to the information about the Properties, she cannot show diligence in uncovering the machinations that she claims corrupted the appraiser's Report. See Holy See, 793 N.Y.S.2d at 569. As Lisa concedes, she participated "actively and extensively in [Gregg's] real estate business." Joint App'x 253.1 ¶ 4. She visited properties, reviewed maps and plans, participated in meetings and phone calls with current and prospective tenants, and entertained key tenants and brokers. Although the Report assumes that the representations provided by Gregg were accurate, Lisa's professional role and involvement allowed her to question and investigate their accuracy. She was in a position to know and find out whether the Properties were worth millions (as she now claims) or nothing.

Third, Lisa was on notice that certain information in the Report was incomplete or inconsistent. Marchitelli expressly cautioned that he had limited access to certain information throughout the appraisal process and in the Report. Gregg owned shares of entities that in turn owned all or parts of the Properties,

21

and Marchitelli noted that he was not given access to the information held by the entities in which Gregg had invested. During the appraisal process, Lisa's attorney complained that Marchitelli was not being given "complete and full information," with resulting "complications and errors in his preliminary reports." Joint App'x 248. Nevertheless, Lisa ultimately decided against retaining a second real estate expert to review the Report — and instructed her attorney to take no further steps in connection with the investigation or appraisal of Gregg's property.

Fourth, Lisa declined to probe an arresting discrepancy in the value of the Southbury Property. Gregg had represented in the Statement that his interest in the Southbury Property was worth nothing; but the Report valued that interest at $755,000. The discrepancy runs counter to the idea that the appraiser acceded to Gregg's representations; much more importantly, Lisa chose not to diligently seek out the reason for this inconsistency, which would have doubled the size of the marital estate. Instead, Lisa chose to credit Gregg's representations in the Statement and the Stipulation, and the representation of Gregg's lawyer in the Affirmation.

22

In sum, Lisa failed to investigate Gregg's assurances that his real estate investments were worth nothing, notwithstanding warning signs and ample opportunity to do so during the divorce proceedings. "Equitable estoppel will not toll a limitations statute . . . where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." Gleason v. Spota, 599 N.Y.S.2d 297, 299 (2d Dep't 1993) (internal quotation marks and citation omitted).

## VII

The undisclosed sale of the LIC Property, which increased Gregg's cash assets by $650,000, may support application of equitable estoppel. Though Lisa acknowledged that the Stipulation was not induced by fraud and waived her rights to further discovery, she is not barred from asserting claims arising from fraud. Under New York law, "otherwise valid releases or waivers may be set aside on the traditional bases of fraudulent inducement, fraudulent concealment,

23

misrepresentation, mutual mistake or duress." Harding v. Naseman, No. 07 Civ. 8767, 2008 WL 4900562, at *7 (S.D.N.Y. Nov. 14, 2008). This principle would be particularly strong if spouses owe each other a fiduciary duty to disclose assets in divorce. Id.

The undisclosed $650,000 sale of half of Gregg's interest in the LIC Property is factually distinct from the non-disclosure of the Properties' values. The allegations concerning the Statement, the Affirmation, the Report, and the Stipulation are integral to an overarching fraud to conceal the value (or not) of disclosed assets. As to those assets, Lisa was in a position to pursue questions and inconsistencies at the time of the divorce, and did not. The alleged cover-up of $650,000 may stand upon a different footing because that cash asset was undisclosed; Lisa did not learn about the sale of the LIC Property until discovery in this case. That said, it is not clear that the sale of the LIC Property affects the property's valuation. Gordon, who purchased half of Gregg's share in the LIC Property for $650,000, states in his declaration that he was aware that $650,000 was not necessarily the fair market value of the LIC Property, and that he bought the property interest to help Gregg finance the divorce.

24

The sale of the LIC Property and the ensuing circumstances could be found to be fraudulent for the following reasons. First, Gregg did not disclose the transaction or the proceeds. The Purchase Agreement stated that the proceeds would be held in escrow by his real estate attorney, a measure that could be found to be either a convenient accommodation or a concealment in itself. Moreover, at his deposition in 2003, Gregg testified that he still owned over 18% of the partnership interest in the LIC Property, notwithstanding that he sold half of his share just months earlier. Further, as late as July 22, 2004, Gregg signed the Stipulation without adjusting upwards by $650,000 the value of his cash assets. It is a question of fact whether Gregg's non-disclosure was part of the underlying fraud or a concealment of it. However, the sale unquestionably and significantly increased the value of Gregg's assets.

Having concluded that Lisa has raised a question of material fact, we vacate and remand for the district court to consider whether Lisa's claim regarding the $650,000 transaction is tolled and, if necessary, to consider whether triable issues of fact preclude summary judgment on whether Lisa is entitled to a portion of the proceeds from the LIC Property.

## VIII

If the district court ultimately determines that Lisa's claims arising from the sale of the LIC Property are successful, the appropriate remedy will not be to reopen the divorce proceedings or otherwise disturb the Stipulation — both of which are beyond the reach of the federal district court. [3]  Under New York law, "one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement."  See Harding, 2008 WL 4900562, at *5 (citing Slotkin v. Citizens Casualty Co., 614 F.2d 301, 312 (2d Cir. 1979)); see also Sheridan v. Sheridan, 608 N.Y.S.2d 582, 584 (3d Dep't 1994) (holding that because "plaintiff's arguments . . . are aimed at specific financial provisions and not the agreement as a whole," allowing plaintiff's claim to proceed would not mandate setting aside the judgment of divorce).  To the extent that Lisa does have a timely, valid claim, it must be resolved with damages arising solely from the sale of the LIC Property.  See, e.g., Harding,

---

[3] Lisa may prefer to uphold the Judgment of Divorce, since her former husband is dead and her current husband's law firm is her counsel.

2008 WL 4900562, at *5 (explaining that the measure of damages is "the difference between what would have been a fair and honest settlement and the amount . . . accepted in reliance on the alleged misrepresentations of defendant") (citing <u>Griffel v. Belfer</u>, 209 N.Y.S.2d 67, 69 (1st Dep't 1960)).

**IX**

The thoughtful dissent justifies a brief rejoinder.

At the settlement of her divorce back in 2004, the plaintiff suspected that her husband was concealing assets. In particular, she suspected that Gregg had not given "complete and full information" about his assets, and that Gregg had "lied in the past." Joint App'x 248. She nevertheless averred that she was satisfied with her husband's disclosures and forswore the need for the further inquiry that was available to her. The stipulation recited that "[e]ach party has further made independent inquiry into the financial circumstances of the other through discovery and inspection," that "[e]ach party warrants and represents that they have conducted discovery to their satisfaction," and that they did not wish to "take any further steps . . . in connection with such disclosure, discovery,

27

inspection, investigation and appraisal or valuation of the other's property." Id. at 74.

So when the plaintiff filed her complaint more than six years afterward, the suit was barred by the six-year period of limitations. Her invocation of the two-year limitations period under the discovery rule does not render the claim timely, because all that happened in the interim was the deepening of the suspicion of fraud she harbored at the time of the divorce. This federal action was thus initiated to find support for suspicions she could have pursued in the divorce court.

According to the dissent, this outcome means that the claims are both too late and too early at the same time. If so, that is a mere irony produced by sound analysis. (The limited remand is to consider tolling for fraudulent concealment of one asset, which is conceptually distinct from accrual of a limitations period.)

It is not enough for suspicion to brood. If the dissent prevailed, any divorce settlement could be reopened in federal court, at any time, to pursue

28

suspicions that rankled since before divorce proceedings became final.  That is not a good idea; and it is fortunate that the statute of limitations defeats it.

It does not seem useful to respond to the dissent's inventive equine analogy.

## CONCLUSION

For the reasons stated above, we affirm in part, and in part vacate and remand for further proceedings consistent with this opinion.

LEWIS A. KAPLAN, *District Judge,* concurring in part, dissenting in part.

I concur in Part VII of the majority opinion. I respectfully dissent in all other respects. In my view, the majority's affirmance of the dismissal of plaintiff's broader fraud claim rests on a fundamental misapplication of the New York statute of limitations applicable to the accrual of fraud claims and its interaction with the principles governing summary judgment.

The pertinent New York statute is CPLR Section 213, subd. 8, which establishes the prescriptive period for fraud claims. Such an

> "action must be commenced [not later than] *the greater of* six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."[1]

It is common ground that the fraud occurred at the time of the divorce settlement, which was much more than six years before the action was brought. In consequence, the timeliness of plaintiff's fraud claim depends upon whether plaintiff's commencement of this action in 2017 occurred less than two years after

---

[1] Emphasis added.

she "discovered the fraud, or could with reasonable diligence have discovered it." In traveling to its conclusion that this discovery rule does not apply here, the majority mounts two different horses, but those horses head off in different directions. Neither, in my view, properly leads to the majority's destination.

On the one hand, the majority faults plaintiff for "initiat[ing] this action based on suspicion [and for] us[ing] the discovery process to build her case that Gregg misrepresented and concealed information related to the value of the Properties."[12] In other words, she had not yet "discovered" the fraud by the time she brought this suit in 2017. Indeed, in the majority's words, she "ha[d] not shown that she had *any* 'knowledge of facts' supporting the fraud within two years *prior* to initiating the suit."[3] Thus, the logic of the majority's position is that plaintiff "discovered" the fraud only *after* she brought this case. But I cannot square that premise with the majority's affirmance of the dismissal of her fraud claims on the ground that plaintiff filed this case *too late*. For that matter, I cannot square it with

---

[2]

Slip op. at 10-11, 16-17 (first emphasis supplied, second in original).

[3]

*Id*. at 16-17.

2

the policy of New York's discovery rule, the purpose of which is to give defrauded victims, in appropriate circumstances, a chance to sue even after the general six year prescriptive period has expired.  In this case, the majority has ruled that plaintiff sued *too late* to come within the six year period but *too soon* to gain the benefit of the two year discovery period.

This branch of the majority's rationale fails for another reason.  It is inconsistent with the facts that the district court was, and we are, bound to accept for purposes of defendant's motion for summary judgment.

First, the amended complaint alleged that plaintiff "first learned of [her former husband]'s deception when she was called upon to give a deposition in the case *Saunders v. Rechler Equity Management, LLC and Rechler*, No. 11520/13 (Nassau Cty.),"[4] which took place in 2016.  It went on to assert that plaintiff:

> "[i]n preparation for the deposition, . . . learned from defendants' counsel that the Holdings actually were worth tens of millions of dollars. Moreover, [she] learned that [her former husband] had been

---

[4]

JA17.

3

virtually inactive in the real estate business since the Stipulation was signed in 2004, and thus none of the value of the Holdings (beyond ordinary appreciation over time) related to any performance or development since 2004. Indeed, [she] has been informed, and so believes, that the defendants in the *Rechler* action consulted experts and performed analyses that demonstrated that the [*sic*] nearly all the value of the Holdings existed as of the time the Stipulation was signed in 2004."[5]

These allegations largely were confirmed by plaintiff's deposition testimony in this case and her declaration in opposition to defendant's summary judgment motion.[6]

---

[5] *Id.* at 18.

[6] JA 253.6-253.7 (declaration); JA 216, 228-29, 230-33 (deposition).

Indeed, the *defendants'* statement of undisputed facts in support of their summary judgment motion took as a given that plaintiff had learned during the *Rechler* action that the value of her former husband's estate and properties at the time of the divorce was higher than the value appraised at the start of the divorce action. Defendants' Rule 56.1 Statement of Undisputed Facts, ECF No. 41-1, ¶ 19, *Koral v. Saunders*, No. 17-cv-7011 (SJF) (E.D.N.Y. filed Feb. 18, 2020).

This appeal arises in the context of a grant of summary judgment in favor of the defendants. The evidence therefore must be viewed in the light most favorable to the non-moving party. So viewed, the evidence demonstrates that plaintiff discovered the fraud when she learned in 2016, in connection with the deposition in the *Rechler* case, that her former husband's real estate was worth many millions of dollars rather than nothing, as he swore in the divorce proceedings. While she presumably obtained additional evidence in pretrial proceedings in this case, a jury would be entitled to find that her discovery of the fraud occurred less than two years before she brought this lawsuit.

Turning to the majority's other theme, the majority refers to evidence that plaintiff may have been suspicious at the time of the 2002-03 divorce proceedings with respect to her then-husband's valuation of his real estate interests, failed to investigate as fully as she might have done, and may have had sufficient personal familiarity with those interests through her own involvement in the business to have given her knowledge bearing importantly on their value. There may have been other circumstances that perhaps would support a conclusion that any

ignorance on plaintiff's part of the alleged true value of the then-husband's real estate interests was her own fault.[7] If all of those issues were resolved in defendants' favor, they might warrant a conclusion that plaintiff "discovered the fraud, or could with reasonable diligence have discovered it" many years before she brought this action. In that case, plaintiff's fraud claims would be time-barred. But they would be time-barred not because she first discovered the fraud, either actually or constructively, *after* she brought the lawsuit. They would be barred because she knew or was chargeable with knowledge of the fraud at the time of the divorce proceedings in 2002-03. If that were so, "*the greater of* six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it" would have been the six year period. So the untimeliness of the action on that assumption would arise from the expiration of the six year period without regard to the discovery period.

---

[7]
<blockquote>Slip op. at 5-9.</blockquote>

And that brings me back to something to which I already have alluded – the fact that this is an appeal from a summary judgment of dismissal. The plaintiff's evidence must be viewed in the light most favorable to her. The question whether the circumstances to which the majority refers – the suspicion, her failure to pursue further investigation, and so on – warrant a conclusion that the plaintiff either discovered or with reasonable diligence could have discovered the fraud many years ago is a triable issue of fact. Summary judgment should have been denied.

Accordingly, I dissent as indicated.